1

**DLA PIPER LLP (US)**
STEVE L. HERNÁNDEZ (SBN 229065)
steve.hernandez@dlapiper.com
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
Tel: 310.595.3000
Fax: 310.595.3300

**DLA PIPER LLP (US)**
TAYLOR WEMMER (SBN 292539)
taylor.wemmer@dlapiper.com
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Tel: 858.677.1400
Fax: 858.638.5030

Attorneys for Defendant
DOMINO'S PIZZA LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMOND CARMONA, ABRAHAM MENDOZA, ROGER NOGUERIA on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DOMINO'S PIZZA, LLC, a Michigan Corporation, and Does 1-10 <br><br> Defendant. | CASE NO. <br><br> **DEFENDANT DOMINO'S PIZZA LLC'S NOTICE OF REMOVAL AND REMOVAL OF ACTION** <br><br> **[28 U.S.C. §§ 1332, 1441, 1446]** <br><br> [*Removed from County of Orange Superior Court No.: 30-2020-01145146-CU-OE-CXC*] |

2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF JURISDICTION ................................................. 1

II.    VENUE ........................................................................................ 1

III.   PLEADINGS AND PROCEEDINGS TO DATE ......................... 1

IV.   REMOVAL IS TIMELY .............................................................. 3

V.    DEFENDANT IS A NOT A STATE, STATE OFFICIAL OR OTHER GOVERNMENTAL ENTITY ............................................ 3

VI.   DIVERSITY JURISDICTION ..................................................... 3

     A.    Complete Diversity of Citizenship Exists Between Plaintiffs and Domino's .............................................................. 5

     B.    The Amount in Controversy Exceeds $75,000. .................. 7

VII.  COMPLIANCE WITH STATUTORY REQUIREMENTS FOR REMOVAL ................................................................................ 17

VIII. PRAYER .................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anthony v. Sec. Pac. Fin. Servs., Inc.*,
   75 F.3d 311 (7th Cir. 1996) ................................................................. 8

*Bandoy v. Huh*,
   1996 WL 675978 (Cal. Sup. Ct. Sept. 26, 1996) ................................ 16

*Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*,
   465 F.2d 489 (9th Cir. 1972) ............................................................... 9

*Barajas v. Carriage Cemetery Servs. of Cal., Inc.*,
   No. 19-CV-02035-EMC, 2019 WL 2499711 (N.D. Cal. June 17, 2019) ........... 4

*Burns v. Windsor Ins. Co.*,
   31 F.3d 1092 (11th Cir. 1994) ............................................................. 7

*Coleman v. Estes Express Lines, Inc.*,
   730 F. Supp. 2d 1141 (C.D. Cal. 2010) ............................................. 14

*Dart Cherokee Basin Operating Co. v. Owens*,
   574 U.S. 81 (2014) ........................................................................ 1, 8

*Exxon Mobil Corp. v. Allapattah Servs., Inc*.
   545 U.S. 546 (2005) ................................................................. 4, 5, 7

*Flores v. Marriott Resorts Hospitality Corp*.,
   No. CV 18-8012 JVS, 2019 U.S. Dist. LEXIS 6604
   (C.D. Cal. Jan. 7, 2019) .................................................................... 4

*Galt G/S v. JSS Scandinavia*,
   142 F.3d 1150 (9th Cir. 1998) ...................................................... 8, 15

*Johnson v. Columbia Props. Anchorage, LP*,
   437 F.3d 894 (9th Cir. 2006) ............................................................. 6

*Kanter v. Warner-Lambert Co*.,
   265 F.3d 853 (9th Cir. 2001) ............................................................. 4

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
   199 F. Supp. 2d 993 (C.D. Cal. 2002) ............................................... 7

*Korn v. Polo Ralph Lauren Corp.*,
    536 F. Supp. 2d 1199 (E.D. Cal. 2008) ................................................................. 8

*Lew v. Moss*,
    797 F.2d 747 (9th Cir. 1986) ................................................................................ 5

*Lewis v. Verizon Commc'ns., Inc.*,
    627 F.3d 395 (9th Cir. 2010) ................................................................................ 7

*Lippold v. Godiva Chocolatier, Inc.*,
    No. C 10-00421 SI, 2010 WL 1526441 (N.D. Cal. April 15, 2010) .................. 15

*Martin v. The Old Turner Inn*,
    No. BC256037, 2003 WL 22416020 (Cal. Sup. Ct. Feb. 27, 2003) .................. 16

*Mo. State Life Ins. Co. v. Jones*,
    290 U.S. 199 (1933) ............................................................................................ 15

*Muniz v. Pilot Travel Ctrs. LLC*,
    No. CIV S-07-0325 FCD EFB, 2007 WL 1302504
    (E.D. Cal. Apr. 30, 2007) ................................................................................... 14

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686 (9th Cir. 1998) ................................................................................ 6

*Quevedo v. New Albertsons, Inc.*,
    No. SACV 13-1160-JLS, 2015 U.S. Dist. LEXIS 178426
    (C.D. Cal. May 27, 2015) ................................................................................... 16

*Rippee v. Boston Mkt. Corp.*,
    408 F. Supp. 2d 982 (S.D. Cal. 2005) ................................................................... 8

*Sanchez v. Monumental Life Ins. Co.*,
    102 F.3d 398 (9th Cir. 1996) ................................................................................ 8

*Sillah v. Command Int'l Sec. Servs.*,
    No. 14-CV-01960-LHK, 2016 WL 692830 (N.D. Cal. Feb. 22, 2016) ............ 15

*Simmons v. PCR Techs.*,
    209 F. Supp. 2d 1029 (N.D. Cal. 2002) .............................................................. 15

*Singer v. State Farm Mut. Auto Ins. Co.*,
    116 F.3d 373 (9th Cir. 1997) ................................................................................ 8

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
   19 F.3d 514 (10th Cir. 1994) ................................................................. 5

*United Parcel Serv. v. Super. Ct.*,
   196 Cal. App. 4th 57 (2011) ................................................................ 12

*Valdez v. Allstate Ins. Co.*,
   372 F.3d 1115 (9th Cir. 2004) ............................................................... 8

**STATUTES**

28 U.S.C. § 1332 ................................................................................... 1

28 U.S.C. § 1332(a) .......................................................................... 4, 7

28 U.S.C. § 1332(a)(1) ..................................................................... 1, 5

28 U.S.C. § 1332(c)(1) .......................................................................... 6

28 U.S.C. § 1332(d) ............................................................................. 1

28 U.S.C. § 1367 .................................................................................. 4

28 U.S.C. § 1367(a) ...................................................................... 4, 5, 7

28 U.S.C. § 1391(b) ............................................................................. 1

28 U.S.C. § 1441 .................................................................................. 1

28 U.S.C. § 1441(a) .......................................................................... 1, 6

28 U.S.C. § 1446 .................................................................................. 1

28 U.S.C. § 1446(a) ........................................................................ 1, 17

28 U.S.C. § 1446(b) ............................................................................ 17

28 U.S.C. § 1446(b)(3) .......................................................................... 3

28 U.S.C. § 1446(c)(2)(B) ..................................................................... 8

28 U.S.C. § 1446(d) ............................................................................ 17

Cal. Bus. & Prof. Code § 17200 ...................................................... 2, 17

Cal. Civ. Proc Code § 415.30 ................................................................ 2

Cal. Lab. Code §§ 201-203 .................................................................. 14

Cal. Lab. Code § 226 ................................................................... 13, 14

Cal. Lab. Code § 226(a) ...................................................................... 14

Cal. Lab. Code § 226(e)(1) .................................................................. 14

Cal. Lab. Code § 226.7 ................................................................... 11, 12

Cal. Lab. Code § 512 .......................................................................... 12

Cal. Lab. Code § 2802 ..................................................................... 2, 13

**OTHER AUTHORITIES**

California Code of Regulations, Title 8, section 11090 .......................... 12

https://www.bls.gov/opub/btn/volume-5/expenditures-on-celluar-phone-services-have-increased-significantly-since-2007.htm.................................... 13

https://www.vox.com/2018/1/23/16923832/global-smartphone-prices-grew-faster-iphone-quarter.................................................................... 13

IWC Wage Order No. 9-2001(11) ......................................................... 12

IWC Wage Order No. 9-2001(12).......................................................... 12

**TO THE CLERK OF THE COURT, PLAINTIFFS AND PLAINTIFFS' ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Domino's Pizza LLC ("Domino's" or "Defendant") hereby removes this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. Sections 1332, 1441, and 1446. This action was originally filed in the Superior Court of the State of California for the County of Orange and assigned Case No. 30-2020-01145146-CU-OE-CXC.   The grounds for this removal are set forth herein:

## I.   STATEMENT OF JURISDICTION

1.   This Court has original jurisdiction over this action pursuant to 28 U.S.C. sections 1332(a)(1) and 1332(d).

2.   This Court has original jurisdiction under 28 U.S.C. section 1332(a)(1), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil action wherein the amount in controversy for one of the named plaintiffs exceeds the sum of seventy five thousand dollars ($75,000.00), exclusive of interest and costs, and it is between citizens of different States. As set forth below, this case meets all of section 1332's requirements for removal and is timely and properly removed by the filing of this Notice.

3.   In *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014), the United States Supreme Court held that courts must apply the same liberal rules to removal allegations as to other matters of pleading.

## II.   VENUE

4.   The Complaint was filed in the Superior Court of California for the County of Orange. Thus, venue properly lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. section 1391(b).

## III.   PLEADINGS AND PROCEEDINGS TO DATE

5.   As required by 28 U.S.C. section 1446(a), true and correct copies of all process, pleadings and orders served upon Defendant to date in this Lawsuit are

attached to the Declaration of Taylor Wemmer ("Wemmer Decl.") as Exhibits A-F. These are the: (A) Complaint; (B) Summons and Civil Case Cover Sheet; (C) Notice and Acknowledgment of Receipt and Plaintiffs' Proof of Service of same; (D) First Amended Complaint;  (E) Court's Minute Order dated August 10, 2020 and, together (F) Plaintiffs' Status Conference Statement filed on September 1, 2020, Defendant's Notice of Appearance and Status Conference Statement filed on September 2, 2020.

6.      On June 26, 2020, Plaintiffs Edmond Carmona, Abraham Mendoza, and Roger Nogueira (collectively, "Plaintiffs") filed an unverified Complaint in Orange County Superior Court against Domino's entitled *Edmond Carmona, Abraham Mendoza, and Roger Nogueira*, *on behalf of themselves and all others similarly situated, Plaintiffs vs. Domino's Pizza, LLC, a Michigan Corporation, and Does 1-10, Defendants*, Case No. 30-2020-01145146-CU-OE-CXC. Plaintiffs alleged two putative class claims: (1) failure to reimburse for necessary work expenditures under California Labor Code section 2802, and (2) unfair competition under California Business and Professions Code section 17200.   Wemmer Decl., **Exhibit A**.

7.      Domino's counsel agreed to accept service of the original complaint and summons via Notice and Acknowledgement of Receipt form per California Code of Civil Procedure section 415.30, which was signed on July 20, 2020.  Wemmer Decl. **Exhibits B and C**.

8.      On September 1, 2020, Plaintiffs filed a First Amended Complaint ("FAC") which added five new causes of actions brought individually on behalf of each of the three named plaintiffs: (1) failure to provide meal breaks, (2) failure to provide rest breaks, (3) failure to separately pay all wages for work performed, (4) failure to issue accurate itemized wage statements, and (5) waiting time penalties. Wemmer Decl. **Exhibit D**.  Plaintiffs served their FAC electronically on Defense counsel via One Legal.

9.      The case was assigned to Judge Peter Wilson of the Orange County Superior Court, who scheduled a status conference in the matter for September 4,

2020 at 9 a.m. and required that Plaintiff submit a Status Conference Statement at least five days prior to the conference. Wemmer Decl. **Exhibit E**. Other parties could submit similar statements if they chose to do so. Wemmer Decl. **Exhibit F**.

10. Defendant's counsel attended the September 4, 2020 status conference hearing before Judge Wilson and represented that it was considering removing this action to federal court.

11. To Domino's knowledge, no further process, pleadings, or orders related to this case have been filed in the Orange County Superior Court or served by any party other than as described above.

## IV. REMOVAL IS TIMELY

12. Plaintiff's original complaint did not satisfy federal removal requirements; however, Plaintiff's FAC added five new individual claims on behalf of each Plaintiff. "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

13. Removal of the FAC is timely as Domino's files this removal within thirty (30) days of service of the FAC on Domino's, which occurred on September 1, 2020. The thirty-day period for removal runs through October 1, 2020.

## V. DEFENDANT IS A NOT A STATE, STATE OFFICIAL OR OTHER GOVERNMENTAL ENTITY

14. No states, state officials or other governmental entities are named as defendants in this action.

## VI. DIVERSITY JURISDICTION

15. The diversity of citizenship statute provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in /////

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States . . . ." *See* 28 U.S.C. § 1332(a).

16.     As set forth in below, both requirements are satisfied here.  First, complete diversity of citizenship exists between Domino's and Plaintiffs Edmond Carmona ("Carmona"), Abraham Mendoza ("Mendoza") and Roger Nogueira ("Nogueira"). Second, the amount in controversy is satisfied because: (i) the amount in controversy with respect to Carmona's claims exceeds $75,000, exclusive of interest and costs; and (ii) the amount in controversy requirement need only be satisfied as to one of the named Plaintiffs to confer diversity jurisdiction on this Court. *See Exxon Mobil Corp. v. Allapattah Servs., Inc*. 545 U.S. 546, 566 (2005) (holding that the "threshold requirement of §1367(a) is satisfied in cases . . . where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy") (superseded by statute on other grounds); *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 858 (9th Cir. 2001) ("[W]e hold that if a named plaintiff in a diversity class action has a claim with an amount in controversy in excess of $75,000, 28 U.S.C. § 1367 confers supplemental jurisdiction over claims of unnamed class members irrespective of the amount in controversy in those claims...."); *Flores v. Marriott Resorts Hospitality Corp*., No. CV 18-8012 JVS (JPRx), 2019 U.S. Dist. LEXIS 6604, at *12-13 (C.D. Cal. Jan. 7, 2019) (court exercised supplemental jurisdiction over plaintiff Torres' claims pursuant to 28 U.S.C. § 1367 because plaintiff Flores' claims satisfied the amount in controversy requirement, the other elements of diversity jurisdiction were satisfied, and plaintiffs Torres' and Flores' claims were part of the same case or controversy); *Barajas v. Carriage Cemetery Servs. of Cal., Inc.,* No. 19-CV-02035-EMC, 2019 WL 2499711, at *6 (N.D. Cal. June 17, 2019) ("[S]o long as there is subject matter jurisdiction over Ms. Barajas's claims, then the Court has supplemental jurisdiction over the other plaintiffs' claims").

17.     Stated otherwise, where diversity jurisdiction exists as to any claim, federal courts may exercise supplemental jurisdiction "over all other claims that are so

related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In a multi-plaintiff action, if there is complete diversity and one plaintiff's claim satisfies the $75,000 threshold, the district court may exercise supplemental jurisdiction over claims by other plaintiffs in lesser amounts, provided that all claims arise out of the same Article III case or controversy. Thus, because Plaintiff Carmona's claims satisfy the $75,000 threshold, this Court may exercise supplemental jurisdiction over Plaintiffs Mendoza's and Nogueira's claims, in addition to those of the proposed class claims, because they arise out of the same case and controversy. *See Exxon Mobil Corp.,* 545 U.S. at 549.

### A. Complete Diversity of Citizenship Exists Between Plaintiffs and Domino's

18.     There is diversity of citizenship between the Plaintiffs and Domino's, as Plaintiffs and Domino's are citizens of different states.

19.     Plaintiffs Carmona, Mendoza and Nogueira were, at the time of filing this action, and still are on information and belief, citizens of the State of California. (*See* FAC ¶¶ 1, 2, and 19; Declaration of Vincent Ruelas ("Ruelas Decl."), ¶ 3.) Citizenship of a natural person is established by domicile. 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled). A person's domicile is established by physical presence and an intent to remain indefinitely. *Lew v. Moss,* 797 F.2d 747, 749-50 (9th Cir. 1986); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

20.     Here, Plaintiffs' Complaint establishes that Plaintiffs have had, and continue to have, a physical presence in the state of California, with an intent to remain indefinitely. (*See* FAC ¶¶ 1, 2, and 19 ["Plaintiff's . . . previously worked for or continue to work for Domino's in the State of California as delivery drivers"; "Plaintiffs all worked for Domino's Pizza, LLC as truck drivers within Domino's

California facilities"; "throughout the time they worked for Domino's pizza, they spent most of their time driving routes in California and drove routes through and in Orange County and the Los Angeles area."). There is no indication that Plaintiffs Carmona, Mendoza and Nogueira are citizens of a state other than California. *See* FAC. In fact, just a few months ago, each Plaintiff signed a declaration in a related case currently pending in the Central District of California, *Silva v. Domino's Pizza*, Case No. 8:18-cv-02145, in which they stated that they had signed their declarations in Moreno Valley, California (Carmona, signed on June 5, 2020), Murrieta, California (Mendoza, signed on June 8, 2020), and Moreno Valley, California (Nogueira, signed on June 5, 2020). *See* Request for Judicial Notice in support of Defendant's Notice of Removal, Exs. 1-3.

21. Domino's is not a citizen of the State of California. For removal purposes, the citizenship of a Limited Liability Company is based on the citizenship of all of its members. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). For purposes of diversity, a corporation is deemed to be a citizen of the state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

22. Domino's Pizza LLC is a Michigan limited liability company having its principal place of business in Ann Arbor, Michigan. *See* Declaration of Stacey Rodriguez In Support of Notice of Removal ("Rodriguez Decl."), ¶ 3. Domino's, Inc. is the sole member of Domino's Pizza LLC. *Id.*

23. Domino's, Inc. is a Delaware corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate headquarters in Ann Arbor, Michigan. *Id.* at ¶ 4.

24. Any potential "Doe" defendants are disregarded for purposes of removal. 28 U.S.C. § 1441(a); *see also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690–91 (9th Cir. 1998). In addition, there are no allegations in the Complaint with respect to the potential "Doe" defendants. *See* FAC ¶ 14.

25.     Thus, the parties are of diverse citizenship, as Plaintiffs are citizens of California and Domino's is a citizen of Michigan and Delaware. Accordingly, the complete diversity requirement of 28 U.S.C. § 1332(a) is satisfied.

**B.     The Amount in Controversy Exceeds $75,000.**

26.     As stated above, in a multi-plaintiff action, if there is complete diversity and one plaintiff's claim satisfies the $75,000 threshold, the district court may exercise supplemental jurisdiction over claims by other plaintiffs in lesser amounts provided that all claims arise out of the same Article III case or controversy. *See* 28 U.S.C. § 1367(a); *Exxon Mobil*, 545 U.S. at 549. Here, Plaintiff Carmona's claims alone satisfy the $75,000 threshold. Thus, this Court may exercise supplemental jurisdiction over Plaintiffs Mendoza's and Nogueira's claims.

27.     Plaintiffs' FAC is silent as to the total amount of damages; however, a reasonable reading of Plaintiffs' FAC is sufficient to indicate that the sought-after relief exceeds the $75,000 threshold required under 28 U.S.C. section 1332(a).

28.     Domino's denies the validity and merits of the entirety of Plaintiffs' alleged claims, the legal theories upon which they are ostensibly based, and the alleged claims for monetary and other relief that flow therefrom. However, for purposes of removal only, and without conceding that Plaintiffs are entitled to any damages or penalties whatsoever, it is readily apparent that Plaintiff Carmona's claims establish an amount in controversy well in excess of the jurisdictional minimum of $75,000.

29.     For purposes of determining whether the minimum amount in controversy has been satisfied, the Court must look to the allegations of Plaintiffs' Complaint and presume that Plaintiff Carmona will prevail on his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the "amount in controversy analysis presumes that 'plaintiff prevails on liability'")). Put differently, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commc'ns., Inc.*,

627 F.3d 395, 400 (9th Cir. 2010); *see also Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).

30.   "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart,* 574 U.S. at 87.  If the plaintiff or the court questions a defendant's amount in controversy allegation, removal is proper where the "district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold.  28 U.S.C. § 1446(c)(2)(B); *see also Singer v. State Farm Mut. Auto Ins. Co*., 116 F.3d 373, 376 (9th Cir. 1997).

31.   "Under [the preponderance of the evidence] burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  This "burden is not daunting, as courts recognize that under this standard, a removing defendant is *not* obligated to research, state, and prove the plaintiffs' claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted) (emphasis in original) ("*Korn*"); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("[T]he parties need not predict the trier of fact's eventual award with one hundred percent accuracy.").

32.   Economic   damages,   non-economic   damages,   general   damages, attorneys' fees, punitive damages, and injunctive relief are all included in determining the amount in controversy. *See Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (prayer for actual and punitive damages included in determining amount in controversy); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (prayer for attorneys' fees included in determining the amount in controversy where potentially recoverable by statute). Moreover, all claims alleged by Plaintiff Carmona can be aggregated to meet the minimum jurisdictional amount. /////

*See Bank of Cal. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).

33.     Plaintiffs' FAC alleges that for at least four years prior to the filing of the FAC, Domino's failed to separately pay for all "non-driving time" worked, such as work performed before and after driving shifts or for "waiting time" during driving routes (FAC at ¶¶ 11, 42-46); failed to provide meal breaks (*id*. at ¶¶ 12, 49-52); failed to provide rest breaks (*id.* at ¶¶ 12, 55-56); failed to indemnify for necessary expenditures (*id*. at ¶¶ 29-32); failed to provide accurate, itemized wage statements (*id.* at ¶¶ 59-61); failed to provide all compensation due at termination (*id.* at ¶¶ 65-67); and engaged in false, unfair, fraudulent and deceptive business (*id.* at ¶¶ 35-39). Based on these contentions, the amount in controversy with respect to Plaintiff Carmona exceeds the $75,000 requirement.

34.     Plaintiff Carmona was employed as a Delivery & Service driver for Domino's Southern California between from May 23, 2017 to November 29, 2018 (approximately 79 weeks). *See* Ruelas Decl. ¶ 4. *See also* Request for Judicial Notice in Support of Defendant's Notice of Removal, Exhibit 1 (Declaration of Edmond Carmona) ("Carmona Decl.") ¶ 2 ("I am a former driver for Defendant Domino's Pizza ("Domino's"). I worked from May 2017 to November 2018"). During his employment with Domino's, Carmona worked approximately four shifts per week. Ruelas Decl. ¶ 4. Having worked for Domino's for 79 weeks, he worked approximately 316 shifts during this period. Carmona's average hourly rate at the time of his termination was approximately $38.79/hour. Ruelas Decl. ¶ 5.

Domino's Alleged Failure to Separately Pay All Wages for Work Performed

35.     In the FAC, Plaintiff alleges that "Domino's does not pay its drivers for the ***actual*** time it takes to complete their pre- and post-shift work, or the total downtime for its drivers. In fact, it cannot because Domino's does not even track the amount of non-driving hours its drivers work during their shifts . . . Within the pre-shift duties, drivers are also required to conduct a DOT 15-minute pre-shift safety

inspection. Domino's does not actually calculate any of this time." (FAC ¶ 42). Plaintiffs also alleges "Domino's also does not pay Plaintiff and other truck drivers for all the miles they drive" and that "Domino's often mandates that its drivers pick-up empty trays from customer sites, but provides inadequate or no compensation for this task." (FAC ¶ 44).

36.     Although Plaintiff does not allege how often or how many times per week Domino's failed to separately pay for non-driving work, Plaintiff Carmona states as follows in the Declaration he submitted in the above-referenced *Silva* case, which he signed under penalty of perjury:

    a. "Domino's paid me a set 30-minutes for "downtime" like waiting at a customer's location.  This was also not enough money because my downtime in a day was usually more than 30 minutes because of things like traffic delay or delivery delays." (Carmona Decl. ¶ 4).

    b. "I did not record any additional downtime or pre- and post-shift time I worked because I was not going to be paid for it anyway since I was just getting [sic] flat rate. No one instructed me to record this extra time." (*Id.* at ¶ 5).

    c. A manager "explained to me that my scheduled shift time was the time <u>after</u> a driver completed all of his paperwork, obtained keys, fully inspected the truck and the load, and was otherwise ready to leave the yard – i.e., after all the pre-shift duties were completed." (*Id.* at ¶ 6).

    d. "So, for example, if my shift was for 8 p.m., I would arrive around 7:15 p.m. to complete all my pre-shift work so that I was on the road by 8 pm, the start of my shift. None of this time was recorded on my logs or trip sheets." (*Id.* at ¶ 7).

37.     For this cause of action, Plaintiff Carmona seeks recovery of "all uncompensated wages for non-driving work and unpaid rest breaks, plus interest, and /////

1  attorneys' fees and costs, as well as all other legal and equitable relief such as a court

2  may find just and proper."

3       38.    Based on Plaintiff's own declaration, he worked at least 45 minutes a

4  day completing his pre-shift work every day prior to the start of his shift that he did

5  not record on his trip sheets. *Id.* at ¶ 7. He also states that he had more than 30 minutes

6  every day of "downtime" due to traffic delays or delivery delays, but he allegedly

7  only received 30 minutes of pay for this time. *Id.* at ¶ 4.  Plaintiff also alleges in his

8  FAC and his Declaration that there was post-shift time for which he was not paid. *Id.*

9  at ¶ 5; *see also* FAC ¶ 42.  Lastly, Plaintiff alleges that he was not paid for all of his

10  mileage driven each shift.  FAC ¶ 44.

11       39.    Therefore, Domino's conservatively estimates that Carmona seeks

12  recovery for approximately 1 hour of off-the-clock work per day based on the

13  information contained in his Declaration and FAC (45 minutes for pre-shift duties and

14  a total of 15 minutes for all other alleged unpaid time due to post-shift duties and

15  "downtime").   These allegations place a total of **$12,257.64** in controversy (1

16  hour/day x 316 shifts x pay rate of $38.79/hour = $12,257.64).

17       <u>Domino's Alleged Failure to Provide Meal or Rest Periods</u>

18       40.    With respect to meal periods, Plaintiff alleges that: "Plaintiffs regularly

19  worked in excess of five-hour shifts without being afforded at least a half-hour

20  uninterrupted meal break in which they were relieved of all duty"; "Throughout the

21  liability period . . . Defendant failed to inform or advise its drivers of their right to

22  take meal breaks under California law.  In fact, Defendant did not schedule meal

23  breaks and did not inform drivers how to take them"; "As a result of Defendant's

24  failure to advise and inform its employees of their right to take meal breaks, Defendant

25  is liable to the Plaintiffs for one hour of additional pay at the regular rate of

26  compensation for each workday that Defendant did not advise its drivers of their right

27  to take meal breaks, pursuant to California Labor Code § 226.7." FAC ¶¶ 49, 51, and

28  52.

41.     Plaintiffs also allege that they "regularly worked more than three and one-half hours in a day without being authorized and permitted to take a 10-minute duty-free rest period, and regularly worked more than six hours in a day without being authorized and permitted to take two, 10-minute duty free rest periods per four hours or major fraction thereof, as required under California Labor Code § 226.7.  Domino's piece-rate compensation scheme, along with delivery scheduled and timing require[ments] caused drivers to routine[ly] miss rest breaks." FAC ¶ 55.

42.     Under California Labor Code section 512 and IWC Wage Order ("Wage Order") No. 9-2001(11), an employee who works more than five (5) hours per day must be provided a meal period of at least thirty (30) minutes.  California Labor Code section 512 and Wage Order No. 9-2001(11) also provide that employees who work more than ten (10) hours per day must be provided a second meal period of not less than thirty (30) minutes.  Pursuant to Wage Order No. 9-2001(12) and California Code of Regulations, Title 8, section 11090, an employer must provide a ten (10) minute rest period per four (4) hours of work or major fraction thereof.  Under California Labor Code section 226.7, if an employer fails to provide an employee a meal or rest period, the employer shall pay the employee one (1) additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided. If an employer fails to provide both the rest period and the meal period, the employee is entitled to recover two (2) hours of pay at the employee's regular rate of compensation.  *United Parcel Serv. v. Super. Ct.*, 196 Cal. App. 4th 57, 69 (2011).

43.     Based on Plaintiff's allegations (1) that "[t]hroughout the liability period" Domino's failed to "advise its drivers of their right to take meal breaks", (2) that "Defendant is liable to the Plaintiffs for one hour of additional pay at the regular rate of compensation for each workday that Defendant did not advise its drivers of their right to take meal breaks" (FAC ¶¶ 51-52), and (3) that drivers "routine[ly]" missed rest periods due to scheduling requirements (FAC ¶ 55), Plaintiff Carmona has

alleged that no meal or rest periods were complaint and that he has a meal period violation and a rest period violation for every shift he worked.  Therefore, these allegations place a total of **$24,515.28** in controversy (2 hours at the employee's normal hourly rate/day for premium payments, one for missed meal periods and one for missed rest periods) x [316] shifts x pay rate of $38.79/hour).

<u>Domino's Alleged Failure to Indemnify for All Necessary Expenditures</u>

44.     Plaintiffs claim that "Domino's knowingly and intentionally required its drivers to purchase and use their own person cell phones to regularly communicate with Domino's during their routes" and "Defendants required Plaintiffs . . . to pay the certain expenses including but not limited to fees for the use of their cell phone required for their work in accordance with Domino's requirements." FAC ¶¶ 30-31. California Labor Code section 2802 requires employers to reimburse employees for all "necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

45.     Plaintiff does not estimate how much he believes his is owed for the purchase and the use of his cell phone for business purposes during the approximately 19 months he was employed with Domino's. Assuming the average cost of a cell phone is $363[1] and the average monthly phone plan for a cell phone is $963/year in 2014 (and presumably has only increased since then),[2] these allegations place approximately **$1,887.75** in controversy (($963 / 12 months x 19 months) + $363).

<u>Domino's Alleged Failure to Maintain and Provide Accurate Wage Statements</u>

46.     Plaintiffs allege that Domino's failed to maintain and provide accurate wage statements in violation of California Labor Code Section 226 and that "Domino's knowingly and intentionally failed to furnish, and continues to knowingly

---

[1] https://www.vox.com/2018/1/23/16923832/global-smartphone-prices-grew-faster-iphone-quarter

[2] https://www.bls.gov/opub/btn/volume-5/expenditures-on-celluar-phone-services-have-increased-significantly-since-2007.htm

and intentionally fail to furnish, Plaintiffs with timely, itemized statements that accurately reflect the total number of hours worked, nor do they include the rate of pay, or a break-down of the flat daily rate paid to its drivers or any information regarding compensable rest or recovery periods as required by Labor Code § 226(a)." FAC ¶ 61.  Plaintiffs also allege that they seek this penalty for the three-year period prior to the filing of the FAC.  FAC ¶ 62.

47.     California Labor Code section 226 provides for a penalty in the event that an employee suffers an injury as a result of a wage statement that violates this section. If Plaintiff can prove that Domino's violated California Labor Code section 226, which Domino's denies, the penalty for Plaintiff and each putative class member is $50 for the initial pay period and $100 for each additional pay period, with the total penalty not exceeding $4,000 per person.  Cal. Lab. Code § 226(e)(1).

48.     Courts assume a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.  *See, e.g., Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate."); *Muniz v. Pilot Travel Ctrs. LLC,* No. CIV S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. Apr. 30, 2007).

49.     Plaintiff worked a total of 79 weeks and received a pay stub every two weeks, and therefore received approximately 40 pay stubs. *See* Ruelas Decl. ¶ 6. Therefore, Plaintiff has put approximately **$3,950** in controversy (($50 x 1 pay period) + ($100 x 39 pay periods).

Domino's Alleged Failure to Timely Pay Final Wages

50.     Plaintiffs claim Domino's violated California Labor Code §§ 201-203. FAC ¶ 65. Specifically, Plaintiffs allege that "Plaintiffs who ceased employment with Defendant are entitled to unpaid compensation, but to date have no received such compensation for unpaid non-driving work, and rest periods." *Id.* at ¶ 66.  Plaintiffs

also allege that "more than thirty days have passed since Plaintiffs left Defendant's employment." *Id.* at ¶ 67.

51.     Carmona's last day of work with Domino's was November 29, 2018 and he worked an average of 14 hours per day.  Ruelas Decl. ¶ 4.  If Carmona somehow prevails on his unpaid wages claim he would not have been paid all wages due at termination. Thus, the amount put in controversy via this claim  are calculated as follows:  At $38.79/hour (Carmona's average hourly pay rate at termination), and averaging 14 hours worked per day, thirty (30) days' wages for Carmona would place **$16,291.80** in controversy for waiting time penalties if it is proven that Domino's willfully failed to pay all wages due at termination, which Domino's denies.

Attorneys' Fees

52.     Plaintiffs also seek attorneys' fees pursuant to various provisions of the California Labor Code. *See* FAC ¶¶ 4, 32, 47, 53, 57, 62, 68, and prayer for relief. Such fees may be included in determining the amount in controversy where recoverable by statute. *Mo. State Life Ins. Co. v. Jones,* 290 U.S. 199, 201-02 (1933); *Galt*, 142 F.3d at 1156. In the Ninth Circuit, future attorneys' fees through trial can be considered as well as attorneys' fees incurred through the filing of the Complaint. *Galt*, 142 F.3d at 1155; *Simmons v. PCR Techs.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) ("The Ninth Circuit clearly considers attorneys' fees when assessing amount in controversy. Such fees necessarily accrue until the action is resolved.") (internal citation omitted).

53.     Attorneys' fees awards can be significant in wage and hour cases and often exceed the amount of the underlying claims. See, *e.g.*, *Lippold v. Godiva Chocolatier, Inc.*, No. C 10-00421 SI, 2010 WL 1526441, at *3-4 (N.D. Cal. April 15, 2010) (denying plaintiff's motion to remand, finding that anticipated attorneys' fees were sufficient to exceed the $75,000 threshold where plaintiff's wage and hour claims totaled $38,747); *Sillah v. Command Int'l Sec. Servs.*, No. 14-CV-01960-LHK, 2016 WL 692830, at *3 (N.D. Cal. Feb. 22, 2016) (in a single plaintiff overtime case,

awarding "Plaintiff $62,579.30 in attorney's fees"); *Quevedo v. New Albertsons, Inc.*, No. SACV 13-1160-JLS (JPRx), 2015 U.S. Dist. LEXIS 178426 (C.D. Cal. May 27, 2015) (in a single plaintiff wage and hour case, where plaintiff recovered $42,002 in meal period premiums and overtime wages, awarding $358,676.40 in attorneys' fees); *Martin v. The Old Turner Inn*, No. BC256037, 2003 WL 22416020 (Cal. Sup. Ct. Feb. 27, 2003) (awarding $147,610 in attorneys' fees and costs to a single plaintiff who recovered $89,508 in a wage hour case); *Bandoy v. Huh*, 1996 WL 675978 (Cal. Sup. Ct. Sept. 26, 1996) (awarding $73,680 in attorneys' fees in a single plaintiff wage hour case). Accordingly, **$35,000** is an extremely conservative estimate of attorneys' fees in controversy for Plaintiff Carmona—and a fee request by his counsel would likely be significantly more if he were to prevail in this action. In any event, even merely a 33% attorney fee (, common in wage and hour cases, would be sufficient to bring the total amount in controversy above the jurisdictional requirement.

Summary of Amount in Controversy

54.     By the claims asserted in this case, the preponderance of the evidence demonstrates that Plaintiff Carmona is seeking well in excess of $75,000 in damages:

| Plaintiff's Claim | Amount in Controversy |
|---|---|
| Failure to Pay All Wages Due | $12,257.64 |
| Meal and Rest Break Premiums | $24,515.28 |
| Failure to Reimburse Business Expenses | $1,887.75 |
| Wage Statement Penalties | $3,950.00 |
| Waiting Time Penalties | $16,291.80 |
| Attorneys' Fees | $35,000.00 |
| TOTAL | $93,902.47 |

55.     Based on the foregoing analysis, diversity removal is proper.  Specifically, estimated conservatively, Plaintiff Carmona's potential recovery on his claims for unpaid wages, meal period and rest break premiums, failure to provide accurate wage statements, business reimbursement claims, waiting time penalties and attorneys' fees undisputedly surpasses the $75,000 amount in controversy threshold. Moreover, these

calculations do not even take into consideration Plaintiff Carmona's numerous additional claims, including, *inter alia*, different grounds for underpayment of wages such as time spent on rest breaks and mileage driven that was not compensated, pre and post judgment interest, and his unfair business practices claim under California Business and Professions Code section 17200 *et seq.*

## VII. COMPLIANCE WITH STATUTORY REQUIREMENTS FOR REMOVAL

56.    This Notice is timely filed under 28 U.S.C. section 1446(b).

57.    Pursuant to 28 U.S.C. section 1446(a), removal is made to the Central District of California, as it is the district court embracing the place where the State Court Action is pending.

58.    In accordance with 28 U.S.C. section 1446(d), a Notice of Filing of Notice of Removal is being filed with the Clerk of the Superior Court of the State of California in and for the County of Orange where the State Court Action is pending, and Domino's will provide written notice of the filing of this Notice of Removal and all other papers to counsel of record for Plaintiff.

59.    If any question arises as to the propriety of the removal of this action, Domino's respectfully requests the opportunity to present a brief, evidence, and oral argument in support of its position that this case is removable.

## VIII. PRAYER

60.    Wherefore, Domino's respectfully requests that the above-titled action now pending against it in the Superior Court of California, County of Orange, be removed to this Court.

Dated:  October 1, 2020                    **DLA PIPER LLP (US)**

By: */s/ Taylor Wemmer*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
STEVE L. HERNÁNDEZ
TAYLOR WEMMER
Attorneys for Defendant
DOMINO'S PIZZA LLC