UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 20-01905JVS(JDEx) | Date | Dec. 9, 2020 |
| Title | Edmond Carmona et al v. Dominos Pizza LLC et al | | |

| | |
|---|---|
| Present: The Honorable | **James V. Selna, U.S. District Court Judge** |

| | |
|---|---|
| Lisa Bredahl | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Defendant's Motion to Compel Arbitration**

Defendant Dominos Pizza LLC ("Domino's") moved to compel arbitration of Plaintiff Edmond Carmona's ("Carmona") and the putative Class' claims. Dkt. No. 14. Carmona opposed the motion. Dkt. No. 15. Domino's then filed its Reply. Dkt. No. 18. For the following reasons, the Court **DENIES** the motion.

**I. BACKGROUND**

**1.    Factual Background**

The following background is drawn from Carmona's Complaint, filed in state court and attached as Exhibit A to Domino's Notice of Removal. Compl., Dkt. No. 1-2. While not incorporated in the Complaint, additional background information from declarations submitted by both parties is relevant to the Court's decision.

Carmona and the other named Plaintiffs filed suit on behalf of a putative Class of truck drivers for Domino's. Compl. ¶ 1.

Carmona and the putative Class deliver various products (cheese, boxes, trays, meats, dough, etc.) from various Domino's facilities to individual stores. Id. ¶ 2. Carmona and members of the class were responsible "for delivering products from the Southern California Supply Chain Center to Domino's franchisees located within Southern California." Declaration of Miguel Castaneda ("Castaneda Decl.") ¶ 6, Dkt. No. 14-3. At no point did they deliver or transport goods outside of California. Id. ¶ 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 20-01905JVS(JDEx) | Date | Dec. 9, 2020 |
| Title | Edmond Carmona et al v. Dominos Pizza LLC et al | | |

These supply chain stores operate as part of a "nationwide network of 16 supply chain centers." Compl. ¶ 2.  At these Supply Chain Centers, employees "reapportion, weigh, package, store, and use these ingredients to create the Products that Delivery and Service drivers deliver to the individual corporate and franchise locations." Travis Wright Declaration ("Wright Decl.") ¶ 4, Dkt. No. 14-5. The products are then sold to corporate stores and franchisees. Id. ¶ 5.

At the center of the dispute is Domino's purported failure to reimburse Carmona and other members of the putative class for use of their cell phones to communicate while on the job. Id. ¶ 3. Specifically, Carmona alleges that he and other members of the putative Class "are required to purchase their own cell phones to communicate with, and be available for, Domino's. Rather than utilize equipment in the drivers' trucks to communicate with drivers (which do not operate for communication while the truck is moving), Domino's managers and dispatchers instead would regularly text or call drivers' personal cell phones to communicate with them while on the road." Id. Carmona also alleges that Domino's was aware of this practice. Id.

Carmona and the named Plaintiffs filed suit alleging failure to reimburse necessary expenditures, for attorneys' fees, and for costs under the California Labor Code and Business & Professions Code. Compl. ¶ 15. They alleged two causes of action – the first for failure to *reimburse* for all necessary expenditures against all defendants under California Labor Code Section 2802, Id. ¶¶ 21-26, and the second for violation of California Business & Professions Code Section 17200 for actions in further violation of California's Unfair Competition Law and Labor Code Sections 90.5(a) and 2802. Id. ¶¶ 27-33.

## II. Legal Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., any party to an arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3, 4. The FAA eliminates district court discretion and requires a court to compel arbitration of issues covered by the arbitration agreement. Dean Winter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985). The FAA limits the district court's role to determining whether a valid agreement to arbitrate exists and whether the agreement encompasses the disputes at issue. Chiron Corp. v. Orth.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 20-01905JVS(JDEx)     Date Dec. 9, 2020

Title    Edmond Carmona et al v. Dominos Pizza LLC et al

Diagnostic SYS., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

      Section 2 of the Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936 (9th Cir. 2001). Under Section 2, "state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, or unenforceability of contracts generally." Ticknor, 265 F.3d at 937 (quoting Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987)) (internal quotations omitted). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Id. (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686 (2000)) (internal quotations omitted).

### III. DISCUSSION

      At the center of the instant dispute is the applicability of Rittmann v. Amazon.com, Inc., 971 F.3d 904 (9th Cir. 2020) in determining whether Carmona and other members of the putative Class are transportation workers and then even subject to the FAA. Both parties discuss the applicability of Rittman.

      In short, Domino's argues that it does not apply because in its decision, the Ninth Circuit distinguished between the workers carrying packages that remain in a stream of interstate commerce until delivered and therefore are part of a continuous interstate transportation versus local food delivery drivers. Dkt. No. 14-1 at 10 (citing Rittman, 971 F.3d at 915-916). Domino's highlights and stresses this distinction between these truck drivers who participate in the movement of interstate commerce and drivers delivering food for companies like Postmates or DoorDash. Id. at 10-11 (citing Magana v. DoorDash, Inc., 343 F. Supp 3d 891 (N.D. Cal. 2018); Levin v. Caviar, Inc., 146 F. Supp. 3d 1146 (N.D. Cal. 2015); Lee v. Postmates Inc., No. 18-CV-03421-JCS, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 20-01905JVS(JDEx)                                    Date  Dec. 9, 2020

Title       Edmond Carmona et al v. Dominos Pizza LLC et al

     Domino's claims that Carmona and members of the putative class are the exception to Rittman because Domino's is not a transportation or delivery company like Amazon, FedEx, or UPS, instead delivering "its own branded products from its Southern California Supply Chain Center to franchisees located exclusively in California" and unlike in Rittman, Carmona and members of the putative Class "are not in the business of taking goods that have traveled across the country to the "last mile" to their final destination." Id. at 12.  Lastly, to the extent that any of the products arrived in these Supply Chain Centers from out of state, they were then "[c]arefully created, selected, weighed, aggregated, reapportioned, and/or packaged for delivery" there and therefore ceased to be moving through interstate commerce.  Id. at 13-13 (citing Declaration of Travis Wright ("Wright Decl.") ¶ 4).

     Carmona claims that he and the members of the putative Class are subject to the exception as there is little doubt they are engaged in foreign or interstate commerce. Opp'n at 2-3, Dkt. No. 15.  He claims that he and others are more like the truck drivers in Rittman rather than the food delivery drivers and argues that like the drivers in Rittman, "at least some of the goods Plaintiffs deliver were once in the 'flower of interstate commerce.'"  Id.  He also claims that Domino's attempt to distinguish between the instant case and Rittman by claiming that the goods are repackaged at the Supply Chain Centers is baseless.  Id. at 4-5.

     In its Reply, Domino's reasserts that the FAA should apply, noting that Carmona bears the burden of proving he and the putative Class are subject to the exception and that they fail to do so.  Reply at 2, Dkt. No. 18.  Domino's claims that the situation is wholly unlike that in Rittman because here "Plaintiffs transported goods made in California (or transported items back from stores in California to the Supply Chain Center in California)."  Id.  Any facts used to substantiate a claim otherwise are conclusory, according to Domino's.  Id. at 3.  Lastly, Domino's claims that Carmona requests an impermissibly broad reading of Rittman.  Id.

     In Rittman, the Court explored whether Amazon 'AmFlex' drivers who facilitated 'last mile' delivery from Amazon warehouses to the products' destinations using the AmFlex smart phone application were transportation workers within the meaning of the FAA.  Rittman, 971 F.3d at 908.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 20-01905JVS(JDEx)                               Date  Dec. 9, 2020

Title  Edmond Carmona et al v. Dominos Pizza LLC et al

     The FAA exempts workers "engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Court interpreted engaged in interstate commerce "to include workers employed to transport goods that are shipped across state lines," even applying earlier Supreme Court decisions that any exemptions to the FAA should be narrowly construed. Rittman, 971 F. 3d at 909-911 (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001).

     The court then turned to the applicability of Section 1 to AmFlex delivery providers, finding that they fell within the aforementioned exemption. While the court noted the "massive scale" of Amazon's global operations, it impliedly relied on the assumption that AmFlex workers "pick up packages that have been distributed to Amazon warehouses, certainly across state lines." Id. at 915. The court also differentiated between these delivery drivers and those in food delivery services, recognizing "that local food delivery drivers are not 'engaged in the interstate transport of goods' because the prepared meals from local restaurants are not a type of good that are 'indisputably part of the stream of commerce.'" Id. (citing Levin, 146 F. Supp. 3d at 1153).

     The court also stressed that not all local delivery is the same, declining to adopt the dissent's reasoning. Id. at 917. Instead, it adopted the First Circuit's analysis in a similar case:

> Although our ultimate inquiry is whether a class of workers is "engaged in ... interstate commerce," the question remains how we make that determination. The nature of the business for which a class of workers perform their activities must inform that assessment. After all, workers' activities are not pursued for their own sake. Rather, they carry out the objectives of a business, which may or may not involve the movement of "persons or activities within the flow of interstate commerce."

Id. (citing Waithaka v. Amazon.com, Inc., No. 19-1848, 966 F.3d 10, 19 (1st Cir. 2020). It then also analyzed the type of business Amazon was in, namely, not only as a seller of goods, but also as a shipper of goods. Id.

     Numerous courts have since analyzed the effects of the Waithaka and Rittman decisions. Those courts (and others prior) have focused on "[t]he nature of the business for which a class of workers perform[ed] their activities." In re Grice, 974 F.3d 950, 956 (9th Cir. 2020) (citing Waithaka, 966 F.3d at 10). Other courts have focused on whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 20-01905JVS(JDEx)   Date  Dec. 9, 2020

Title   Edmond Carmona et al v. Dominos Pizza LLC et al

the "interstate movement of goods is a central part of the class members' job description." Wallace v. Grubhub Holdings, Inc., 970 F.3d 798, 801 (7th Cir. 2020).

The Court finds significant similarities between the truck drivers here and the 'last mile' drivers in Rittman.

First, the "nature of the business" for which the truck drivers perform their work is to facilitate the movement of these products, coming both from within California and outside, to their final destination. Moreover, that Supply Chain Center employees may prepare or otherwise alter the products that arrive there from out of state prior to deliver to in-state franchisees does not transform the truck drivers into food delivery service drivers. Domino's still owns the products prior to their delivery to their franchisees. If anything, the repackaging, preparations, etc., can be viewed as merely an extension of the nature of the delivery.

The Court does take note of Domino's argument that it is unlike Amazon, UPS, FedEx, etc., because unlike those companies, it is not involved in the transportation business. Domino's notes that it "does not deliver other businesses good [sic] and products" and that it is "a pizza company." Dkt. No. 14-1 at 12. While the Court acknowledges this distinction, it contradicts the overwhelming precedent that courts should look to the employee's job description and determine whether interstate movement of goods is a central part of it. See Wallace, 970 F.3d at 801. It also simplifies the issue: clearly, neither party can dispute that Domino's is a pizza company and not a transportation or delivery company. However, Domino's argument here requests that the Court generalize the company's actions at such a heightened level such that few or none of its employees could be viewed as engaging in interstate commerce, even though it is a national company.

Therefore, Court cannot conclude that the stream of interstate commerce concludes once the products arrive at the Supply Chain Centers. Rather, the products are similar – albeit not directly analogous – to the packages delivered by AmFlex drivers in Rittman. See Rittman, 971 F.3d at 916 ("The packages are not held at warehouses for later sales to local retailers; they are simply part of a process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 20-01905JVS(JDEx)                                  Date  Dec. 9, 2020

Title     Edmond Carmona et al v. Dominos Pizza LLC et al

      Second, under Rittman, the truck drivers are not like food delivery service drivers, which the Ninth Circuit (and others) have found not to fall within the relevant exemption. An analysis of the type of work and the nature of the business for which they would perform their activities reveals as much.  Food delivery service drivers deliver "prepared meals from local restaurants," not the dough, cheese, tomato sauce, etc., that may be used to make those prepared meals.  Put simply, there is a fundamental difference from "the local delivery of meals prepared in local restaurants" and the "[i]ntrastate deliveries of goods [] considered to be part of interstate commerce" when those "deliveries are merely a continuation of an interstate journey," even if the goods are repackaged or altered. Nieto v. Fresno Beverage Co., 33 Cal. App. 5th 274, 283, (2019), reh'g denied (Mar. 27, 2019), review denied (July 10, 2019) (quoting Bell v. H.F. Cox, Inc., 209 Cal. App. 4th. 62, 77 (2012).  In the latter, the court found a "practical continuity of movement of the goods" to exist.  Bell, 209 Cal. App. 4th at 77.

      The Court recognizes that this instant tentative order differs from its earlier order in Eddie Silva v. Domino's Pizza (8:18-cv-02145-JVS (JDEx)).  The Court can distinguish between Silva's situation and the one presented here.  First, and most notably, Rittman had not yet been decided.  In Silva, the Court based its holding partially on the fact that Domino's had cited a number of cases holding that section 1 of the FAA did not apply to drivers transporting goods intrastate, versus Silva had cited none.  The Ninth Circuit's decision in Rittman, particularly its reasoning regarding AmFlex's last mile drivers, requires that the Court consider a different analysis, as it did above.  Second, in Silva, the Court found that Domino's had presented evidence that Silva transported items to locations within California from the Southern California Supply Chain Center, and that even though he performed the last leg of a journey of goods that begun from out of state, Silva participated solely in intrastate commerce.  The record – which also reflects that some of the goods come in from out of state – combined with the decision in Rittman provide a sufficient basis to distinguish the instant situation from that in Silva.

      Therefore, the Court finds that Carmona and the other members of the putative Class are exempt from the FAA's mandate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 20-01905JVS(JDEx)                                  Date  Dec. 9, 2020

Title  Edmond Carmona et al v. Dominos Pizza LLC et al

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion.

**IT IS SO ORDERED.**

                                                                                          :    0

                                                     Initials of Preparer        lmb