FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EDMOND CARMONA, | No. 21-55009 |
| *Plaintiff-Appellee*, | D.C. No. 8:20-cv-01905-JVS-JDE |
| and | |
| ABRAHAM MENDOZA; ROGER NOGUERIA, on behalf of themselves and all others similarly situated, | OPINION |
| *Plaintiffs*, | |
| v. | |
| DOMINO'S PIZZA, LLC, a Michigan Corporation, | |
| *Defendant-Appellant*. | |

On Remand from the United States Supreme Court

Argued and Submitted June 20, 2023
Seattle, Washington

Filed July 21, 2023

Before: Kim McLane Wardlaw, Barrington D. Parker, Jr.,[*] and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[**]

### Federal Arbitration Act

On remand from the United States Supreme Court, the panel affirmed the district court's order denying Domino Pizza's motion to compel arbitration in a putative class action brought by three Domino truck drivers, alleging violations of California labor law.

The panel previously affirmed the district court's denial of Domino's motion to compel arbitration, holding that because the drivers were a "class of workers engaged in foreign or interstate commerce," their claims were exempt from the Federal Arbitration Act by 9 U.S.C. § 1. The Supreme Court granted certiorari, vacated, and remanded for reconsideration in light of *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022).

On remand, the panel stated that its prior decision squarely rested upon its reading of *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), which concerned Amazon

---

[*] The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

delivery drivers. The panel found no clear conflict between *Rittmann* and *Saxon* and nothing in *Saxon* that undermined the panel's prior reasoning that because the plaintiff drivers in this case, like the Amazon package delivery drivers in *Rittmann,* transport interstate goods for the last leg to their final destinations, they are engaged in interstate commerce under § 1.

Rejecting Domino's attempts to distinguish *Rittmann*, the panel stressed that the issue was not how the purchasing order was placed, but rather whether the plaintiff drivers operate in a single, unbroken stream of interstate commerce that renders interstate commerce a central part of their job description. A pause in the journey of the goods at a warehouse did not remove the goods from the stream of interstate commerce because the goods were inevitably destined from the outset of the interstate journey for Domino's franchisees.

## COUNSEL

Norman M. Leon (argued), DLA Piper LLP US, Chicago, Illinois; Steve L. Hernández, DLA Piper LLP US, Los Angeles, California; Taylor Wemmer, DLA Piper LLP US, San Diego, California; Courtney G. Saleski, DLA Piper LLP US, Philadelphia, Pennsylvania; Jacob Frasch, DLA Piper LLP US, Washington, D.C.; Gerson H. Smoger, Smoger & Associates, Dallas, Texas; for Defendant-Appellant.

Aashish Y. Desai (argued) and Adrianne De Castro, Desai Law Firm P.C., Costa Mesa, California, for Plaintiff-Appellee.

Elizabeth B. Wydra, Brianna J. Gorod, and Smita Ghosh, Constitutional Accountability Center, Washington, D.C., for Amicus Curiae Constitutional Accountability Center.

Jeffrey R. White and Tad Thomas, American Association for Justice, Washington, D.C.; Gerson H. Smoger, Smoger & Associates, Dallas, Texas; for Amicus Curiae American Association for Justice.

# OPINION

HURWITZ, Circuit Judge:

This is a putative class action by three truck drivers against their employer, Domino's Pizza. We previously affirmed the district court's denial of Domino's motion to compel arbitration, holding that because the drivers were a "class of workers engaged in foreign or interstate commerce," their claims were exempted from the Federal Arbitration Act ("FAA") by 9 U.S.C. § 1. *Carmona v. Domino's Pizza, LLC*, 21 F.4th 627, 628 (9th Cir. 2021). The Supreme Court granted certiorari, vacated, and remanded for reconsideration in light of *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022). *Domino's Pizza, LLC v. Carmona*, 143 S. Ct. 361 (2022). Upon reconsideration, we again affirm.

I.

Domino's sells ingredients used to make pizzas to its franchisees. As relevant to this case, Domino's buys those ingredients from suppliers outside of California, and they are then delivered to Domino's Southern California Supply Chain Center. At the Supply Center, Domino's employees

reapportion, weigh, and package the relevant ingredients for delivery to local franchisees but do not otherwise alter them. The plaintiff drivers ("D&S drivers"), employees of Domino's, then deliver the ingredients in response to orders from Domino's California franchisees.

Three D&S drivers filed this putative class action against Domino's in 2020, alleging various violations of California labor law. Each plaintiff's agreement with Domino's requires arbitration of "any claim, dispute, and/or controversy" between them. But the district court denied Domino's motion to compel arbitration, finding the plaintiffs exempt from the FAA under 9 U.S.C. § 1 as members of a class of transportation workers "engaged in foreign or interstate commerce." We affirmed, concluding that these last-leg truck drivers were "engaged in a single, unbroken stream of interstate commerce." *Carmona*, 21 F.4th at 629–30 (cleaned up).

II.

In *Saxon*, the Supreme Court considered whether § 1 exempted from the FAA "workers who physically load and unload cargo on and off airplanes." 142 S. Ct. at 1789. In finding these workers exempt, the Court focused on the "class of workers" at issue, an inquiry which emphasized not the employer's business but rather "the actual work that the members of the class . . . typically carry out" in that business. *Id.* at 1788. An employee whose typical duties were to clean a local office, for example, would not be a member of an exempt class simply because his employer was itself engaged in interstate commerce. *Id.* at 1792. But the Court held that an employee who "frequently loads and unloads cargo on and off airplanes that travel in interstate commerce" was engaged in interstate commerce. *Id.* at 1793. The Court

| 6 | CARMONA V. DOMINO'S PIZZA |
|---|---|

held that, in assessing whether workers are engaged in interstate commerce, the critical question is whether the workers are actively "engaged in transportation" of goods in interstate commerce and play a "direct and necessary role in the free flow of goods across borders." *Id.* at 1790 (cleaned up). In finding that the cargo workers met this description, the Court specifically rejected Southwest's argument that the cargo workers must themselves cross state lines to be engaged in interstate commerce. *Id.* at 1791.

*Saxon* did not address the question now before us. Rather, the Court expressly pretermitted whether "last leg" drivers like the D&S drivers in this case qualified for the exemption, stating:

> We recognize that the answer will not always be so plain when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders. *Compare, e.g.*, *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915 (C.A.9 2020) (holding that a class of "last leg" delivery drivers falls within § 1's exemption), with, *e.g.*, *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 803 (C.A.7 2020) (holding that food delivery drivers do not). In any event, we need not address those questions to resolve this case.

*Id.* at 1789 n.2.

### III.

The Supreme Court remanded "for further consideration in light of [*Saxon*]." *Carmona*, 143 S. Ct. at 361. Our prior

decision squarely rested upon our reading of *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), a case whose continued validity *Saxon* expressly declined to address. *Saxon*, 142 S. Ct. at 1789 n.2. Unless *Rittmann* is somehow "clearly irreconcilable" with *Saxon*, we are required to continue to follow it.[1] *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). We find no clear conflict between *Rittmann* and *Saxon*.

*Rittmann* confronted whether delivery drivers who transported goods from Amazon warehouses to in-state consumers were exempt from the FAA under § 1. 971 F.3d at 915. After first analyzing the business of "the company for whom the delivery person works," *id.* at 917, we turned to what *Saxon* later confirmed is the central inquiry: what the relevant class of workers actually did, *id.* at 915 ("AmFlex workers pick up packages that have been distributed to Amazon warehouses, certainly across state lines, and transport them for the last leg of the shipment to their destination."). And we concluded that, because the Amazon goods shipped in interstate commerce were not transformed or altered at the warehouses, the entire journey represented one continuous stream of commerce. *Id.* at 915–17.

Our prior opinion held that the FAA exempted the claims in this case because the D&S drivers were part of a "class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1; *Carmona*, 21 F.4th at 628. Although we noted that the "nature of the business for which a class of workers performed their activities" was a "critical factor" in the § 1 analysis, *id.* at 629 (cleaned up), we in the end focused

---

[1] Although we recognize that the Fifth Circuit disagrees with *Rittmann*, *see Lopez v. Cintas Corp.*, 47 F.4th 428, 432–34 (5th Cir. 2022), we are bound by it.

heavily on what the class of workers to which the plaintiffs belonged actually did. Relying on *Rittmann*, we stressed that because "the D&S drivers, like the Amazon package delivery drivers, transport [interstate] goods for the last leg to their final destinations," they are engaged in interstate commerce under § 1. *Id.* at 630 (cleaned up). Nothing in *Saxon* undermines that reasoning.

Our prior opinion also squarely rejected Domino's attempts to distinguish *Rittmann*. *Id.* We find them no more persuasive the second time around. Domino's primarily argues that *Rittmann* does not control because, unlike Amazon customers, Domino's franchisees do not order the goods until after they arrive at the warehouse. But we previously stressed that "[t]he issue is not how the purchasing order is placed, but rather whether the D&S drivers operate in a single, unbroken stream of interstate commerce that renders interstate commerce a central part of their job description." *Id.* (cleaned up). Indeed, the Supreme Court has long rejected the notion that the timing of an order is itself dispositive of whether goods remain in the stream of interstate commerce. *See Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 570 (1943) ("We do not mean to imply that a wholesaler's course of business based on anticipation of needs of specific customers, rather than on prior orders or contracts, might not at times be sufficient to establish that practical continuity in transit necessary to keep a movement of goods 'in commerce' . . . .").

Nor does the pause in the journey of the goods at the warehouse alone remove them from the stream of interstate commerce. *See id.* at 568 ("The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey."); *id.* ("[I]f the halt in the movement of goods is a convenient intermediate step in the process of

getting them to their final destinations, they remain 'in commerce' until they reach those points."); *see also Fraga v. Premium Retail Servs., Inc.*, 61 F.4th 228, 241 (1st Cir. 2023) (holding that an employer's "use of its own employees to carry the materials for the last part of each interstate journey does not turn the journey into two unconnected trips"). Because the goods in this case were inevitably destined from the outset of the interstate journey for Domino's franchisees, it matters not that they briefly paused that journey at the Supply Center.

Citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), Domino's also argues that the interstate journey ended at the Supply Center because the goods were repackaged there. But in contrast to *Schechter*, which involved chickens slaughtered at the poultry company and only then delivered to local buyers, *id.* at 520–21, the relevant ingredients in this case are unaltered from the time they arrive in the Supply Center until they are delivered to franchisees. *Immediato v. Postmates, Inc.*, 54 F.4th 67 (1st Cir. 2022), upon which Domino's also relies, is similarly inapposite: the products delivered in that case were transformed from their constituent ingredients into meals before the plaintiff drivers delivered them. *Id.* at 78.

## IV.

We conclude that *Saxon* is not inconsistent, let alone clearly irreconcilable, with *Rittmann*, which continues to control our analysis. We therefore **AFFIRM** the order of the district court.