1  DESAI LAW FIRM, P.C.
2  Aashish Y. Desai, Esq. (SBN 187394)
   Adrianne De Castro, Esq. (SBN 238930)
3  3200 Bristol Ave., Suite 650
4  Costa Mesa, CA 92626
   Tel:  (949) 614-5830
5  Fax:  (949) 271-4190
6  aashish@desai-law.com
   adrianne@desai-law.com
7
   Attorneys for Plaintiffs
8

9            IN THE UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  EDMOND CARMONA, ABRAHAM              CASE NO. 8:20-cv-01905-JVS-(JDEx)
    MENDOZA, ROGER NOGUEIRA,
13  THOMAS ARRIOLA, BURNETT             Hon. James V. Selna
    BRULEE, GYORGY DIAZ, DANIEL
14  ETCHEPARE, RAUL QUIROZ,            PLAINTIFFS' NOTICE AND
15  SANTOS FONSECA-ROMERO, MARC        MOTION FOR PRELIMNARY
    MORAN on behalf of themselves and all  APPROVAL OF CLASS ACTION
16  others similarly situated, and all other  SETTLEMENT; MEMORANDUM
    aggrieved employees,               OF POINTS AND AUTHORITIES
17                                      IN SUPPORT THEREOF
18              Plaintiffs,
            v.                          HEARING SCHEDULE
19
20  DOMINO'S PIZZA, LLC, a Michigan    Date:     December 22, 2025
    Corporation, and DOES 1-10, inclusive,  Time:     1:30 p.m.
21                                      Dept.:    10C
            Defendants.
22

23

24

25

26

27

28

PLEASE TAKE NOTICE that on December 22, 2025, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 10C of this Court, located at 411 West 4th Street, Santa Ana, California 92701, Plaintiffs Edmond Carmona, Abraham Mendoza, Roger Nogueira, Thomas Arriola, Burnett Brulee, Gyorgy Diaz, Daniel Etchepare, Raul Quiroz, Santos Fonseca-Romero, and Marc Moran (collectively, "Named Plaintiffs") will move the Court for preliminary approval of the proposed Class Action and Private Attorneys General Act ("PAGA") Settlement with Defendant Domino's Pizza, LLC ("Domino's").

This Motion is **<u>unopposed</u>** by Defendant and the parties have extensively met and conferred under Local Rule 7-3. As detailed in the accompanying Memorandum of Points and Authorities, the proposed Settlement is fair, reasonable, and adequate, and falls well within the range of approval, providing substantial and immediate relief to the Classes after nearly six years of contentious litigation involving complex legal and factual issues.

Plaintiffs respectfully request an order: (1) preliminarily approving the proposed Settlement; (2) preliminarily certifying the three classes defined below for settlement purposes only; (3) appointing Named Plaintiffs as class representatives and their counsel, Aashish Y. Desai and Adrianne De Castro of Desai Law Firm, P.C., as Class Counsel; (4) preliminarily approving Class Counsel's request for attorneys' fees and litigation costs; (5) approving the proposed Notices and notice dissemination plan; (6) appointing ILYM Group, Inc. as the Settlement Administrator; and (7) scheduling a final approval hearing.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Aashish Y. Desai (including exhibits thereto) and Adrianne De Castro, a Proposed Order preliminarily approving the Settlement, certifying the settlement classes, appointing class representatives and Class Counsel, and setting a final approval hearing, the Court's

record in this action, all matters of which the Court may take judicial notice, and any oral or documentary evidence presented at the hearing on this Motion.

Respectfully submitted,

Dated: November 24, 2025          DESAI LAW FIRM, P.C.

                                 By:    */s/ Aashish Y. Desai*
                                        Aashish Y. Desai
                                        Adrianne De Castro
                                        Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.   HISTORY AND STATUS OF THE CASE ............................................... 1

   A.  The Claims and Relief Requested ................................................... 1

   B.  Factual Background and Procedural History ................................... 3

      1.  The *Carmona* Litigation ......................................................... 3
      2.  The *Arriola* Litigation .......................................................... 4
      3.  The Consolidated Complaint .................................................. 4
      4.  Significant Discovery Efforts .................................................. 5
      5.  Mediation and Settlement Terms ........................................... 6

III.  THE PROPOSED SETTLEMENT .......................................................... 7

   A.  Settlement Eligibility and Defined Groups .................................... 7

   B.  Settlement Amount and Allocation Formula .................................. 8

   C.  Release of Claims ......................................................................... 11

   D.  Appointment of Class Representatives and Class Counsel ...................... 11

   E.  Notice Procedure .......................................................................... 12

   F.  Settlement Administrator .............................................................. 13

   G.  Class Representative Service Awards ........................................... 13

   H.  Attorneys' Fees ............................................................................ 13

IV.   ARGUMENT ........................................................................................... 14

   A.  Certification of the Rule 23 Classes Is Proper ............................ 14

      1.  Rule 23(a) Requirements Are Satisfied ................................ 14
      2.  Certification Is Proper Under Rule 23(b)(3) ........................ 16
      3.  Plaintiffs' Counsel Should Be Appointed as Class Counsel ............... 17

   B.  The Settlement Is Fair, Reasonable, and Adequate ..................... 18

      1.  Rule 23(a) Requirements Are Satisfied ................................ 18
      2.  Plaintiffs Faced Significant Risks in Continuing Litigation ............... 19
      3.  The Settlement Amount Is Appropriate ................................ 21
        a.  Recovery for Non-PAGA Drivers' Claims ................... 21
        b.  Recovery for Non-Driver Labor Code Claims ............. 22
        c.  The PAGA Settlement Amount Is Reasonable ............. 23

4.  The Parties Engaged in Sufficient Discovery to Make an
    Informed Decision About Settlement ................................... 24

5.  Counsel's Experience and Views Support Approval .......................... 24

V.    CONCLUSION ..................................................................................... 25

WORD COUNT CERTIFICATION ....................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

<u>C</u>ASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ........................................................................ 16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ........................................................................ 16

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680, 687 (1946) ................................................................ 20

*Arias v. Superior Court*,
    46 Cal. 4th 969 (2009) .................................................................... 14

*Arredondo v. Southwestern & Pac. Specialty Fin., Inc.*,
    No. 18 Civ. 1737, 2022 U.S. Dist. LEXIS 23758 (E.D. Cal. Feb. 9, 2022) ......... 19

*Arriola et al. v. Domino's Pizza, LLC*,
    Case No. 8:23-cv-01358-JVS-JDE .............................................. 1, 4

*Belaire-West Landscape, Inc. v. Superior Court*,
    149 Cal. App. 4th 554 (2007) ........................................................... 5

*Betancourt v. Advantage Human Resourcing, Inc.*,
    No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361 (N.D. Cal. Jan. 28, 2016) ....... 19

*Billups-Larkin v. Aramark Servs., Inc.*,
    No. 21 Civ. 6852, 2023 U.S. Dist. LEXIS 122756 (N.D. Cal. July 17, 2023) ..... 23

*Bowerman v. Field Asset Servs.*,
    60 F.4th 459, (9th Cir. 2023) ................................................ 19, 20

*Camp v. Home Depot U.S.A., Inc.*,
    84 Cal.App.5th 638 (2022) ............................................................. 20

*Carmona v. Domino's Pizza, LLC*,
    21 F.4th 627 (9th Cir. 2021) ............................................................. 3

*Carmona v. Domino's Pizza, LLC*,
    73 F.4th 1135 (9th Cir. 2023) ........................................................... 4

*Carmona v. Domino's Pizza, LLC*,
  No. 8:20-cv-01905-JVS-JDE, 2020 U.S. Dist. LEXIS 227159
  (C.D. Cal. Dec. 2, 2020) .......................................................................... 3, 4

*Cawthorne v. Rush Truck Ctrs. of Cal., Inc.*, No. 17 Civ. 1541, 2019 U.S. Dist.
  LEXIS 248125 (C.D. Cal. Mar. 18, 2019) ................................................ 17

*Criswell v. Boudreaux*,
  No. 20 Civ. 1048, 2021 U.S. Dist. LEXIS 187438
  (E.D. Cal. Sept. 29, 2021) ......................................................................... 19

*Domino's Pizza, LLC v. Carmona*,
  No. 21-1572, 143 S. Ct. 361 (2022) .......................................................... 4

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
  213 F.3d 454 (9th Cir. 2000) ..................................................................... 24

*Eddie Silva v. Domino's Pizza, LLC*,
  No. 21-55093, 2022 U.S. App. LEXIS 3228 (9th Cir. Feb. 8, 2022) ...................... 20

*Edmond Carmona, Abraham Mendoza, Roger Nogueira, Thomas Arriola, Burnett
  Brulee, Gyorgy Diaz, Daniel Etchpare, and Raul Quiroz v. Domino's Pizza, LLC*,
  Case No. 8:20-cv-01905-JVS-JDE ........................................................... 1

*Fleming v. Covidien Inc.*,
  No. 10 Civ. 1487, 2011 U.S. Dist. LEXIS 154590
  (C.D. Cal. Aug. 12, 2011) .......................................................................... 23

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011, (9th Cir. 1998) ........................................................ 15, 16, 18

*Hudson v. Libre Tech. Inc.*,
  No. 18 Civ. 1371, 2020 U.S. Dist. LEXIS 84576 (S.D. Cal. May 12, 2020) ....... 19

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................... 18, 21

*Johnson v. Moss Bros. Auto Grp., Inc.*,
  No. 19 Civ. 2456, 2022 U.S. Dist. LEXIS 112361
  (C.D. Cal. June 24, 2022) ................................................................... 18, 23

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ........................................................................22

*Maloney v. Mullen Auto., Inc.*,
   No. 25 Civ 1187, 2025 U.S. Dist. LEXIS 114767
   (C.D. Cal. May 15, 2025) ..............................................................................15

*Martin v. Monsanto Co.*,
   No. 16 Civ 2168, 2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017)....17

*McLeod v. Bank of Am., N.A.*,
   No. 16 Civ. 3294, 2018 U.S. Dist. LEXIS 195314 (N.D. Cal. Nov. 14, 2018)....23

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).....................................................................14

*O'Connor v. Uber Techs., Inc.*,
   201 F. Supp. 3d 1110 (N.D. Cal. 2016)...........................................................24

*Rittman v. Amazon.com, Inc.*,
   971 F.3d 904 (9th Cir. 2020) ...........................................................................4

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948, 967 (9th Cir. 2009) ..................................................................24

*Silva v. Domino's Pizza, LLC*,
   No. SACV 18-2145 JVS (JDEx) (C.D. Cal. 2019) ............................................20

*Singh v. Roadrunner Intermodal Servs., LLC*,
   No. 15 Civ. 01497, 2018 WL 2412325 (E.D. Cal. May 29, 2018) .....................22

*Southwest Airlines Co. v. Saxon*,
   596 U.S. 450 (2022) .........................................................................................3

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .......................................................................................16

*Van Kempen v. Matheson Tri-Gas, Inc.*,
   No. 15 Civ. 660, 2017 U.S. Dist. LEXIS 137182 (N.D. Cal. Aug. 25, 2017)......23

*Vasquez v. Coast Valley Roofing*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) ...................................................... 21

*Walsh v. CorePower Yoga LLC*,
   No. 16 Civ 5610, 2017 U.S. Dist. LEXIS 20974
   (N.D. Cal. Feb. 14, 2017) ............................................................................ 18

## STATUTES

Business and Professions Code § 17200 et seq. ............................................... 3

Cal. Lab. Code § 2699(e)(2) ............................................................................ 23

California Labor Code § 2698 et seq .................................................................. 2

California Labor Code § 2802 ............................................................................. 3

Labor Code § 226 ............................................................................................. 22

## RULES

Fed. R. Civ. P. 23 (b)(3) ............................................................................ 14, 17

Fed. R. Civ. P. 23(g)(1)(A) ............................................................................. 17

Fed. R. Civ. P. 23(a) and (b) ......................................................................... 14

Fed. R. Civ. P. 23(a) ...................................................................................... 14

Fed. R. Civ. P.23(a) and (b)(3) ...................................................................... 25

Fed. R. Civ. P. 23(a)(2) .................................................................................. 15

Fed. R. Civ. P. 23(a)(3) .................................................................................. 15

Fed. R. Civ. P.23(a)(4) ................................................................................... 15

Fed. R. Civ. P. 23(b)(3) ............................................................................ 16, 19

Fed. R. Civ. P. 23(e)(2) .................................................................................. 14

Fed. R. Civ. P. 23(g) ...................................................................................... 15

<u>Treatises</u>

Alba Conte & Herbert B. Newberg,
4 Newberg on Class Actions § 13.15 (5th ed.) ........................................................ 18

*Manual for Complex Litigation* §§ 21.632-634 (4th ed. 2004)................................ 14

*Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:22* (4th ed.
    2002) ................................................................................................................. 14

## I.    INTRODUCTION

Plaintiffs Edmond Carmona, Abraham Mendoza, Roger Nogueira, Thomas Arriola, Burnett Brulee, Gyorgy Diaz, Daniel Etchpare, Raul Quiroz, Santos Fonseca-Romero, and Marc Moran respectfully submit this Memorandum in support of their unopposed motion for preliminary approval of the proposed Class Action and PAGA Settlement with Defendant Domino's Pizza, LLC. This Settlement is the culmination of nearly six years of vigorous litigation, marked by extensive discovery, multiple appeals to the Ninth Circuit Court of Appeals and the United States Supreme Court, and intensive arm's-length negotiations facilitated by a highly experienced mediator.

Under the terms of the Settlement, Domino's has agreed to pay a non-reversionary sum of $2,300,000 to resolve claims on behalf of three classes of California drivers and non-exempt hourly workers, as well as PAGA members. This amount provides meaningful recovery to the Classes, accounting for the significant uncertainties in establishing liability, achieving class certification, and proving damages. Given these risks, the Settlement represents an outstanding result for the Classes and warrants preliminary approval by the Court.

## II.    HISTORY AND STATUS OF THE CASE

### A.    The Claims and Relief Requested

Named Plaintiffs, along with the putative class members and aggrieved employees, worked for Domino's in California as either delivery drivers or non-exempt hourly workers in its distribution facilities. This consolidated action encompasses *Edmond Carmona, Abraham Mendoza, Roger Nogueira, Thomas Arriola, Burnett Brulee, Gyorgy Diaz, Daniel Etchpare, and Raul Quiroz v. Domino's Pizza, LLC*, Case No. 8:20-cv-01905-JVS-JDE ("Carmona"), which combines *Arriola et al. v. Domino's Pizza, LLC*, Case No. 8:23-cv-01358-JVS-JDE,

1

and the original *Carmona* case. To represent non-driver claims, Plaintiffs Santos Fonseca-Romero and Marc Moran are added as class representatives for the Non-Driver Class and as aggrieved employees for the Non-Driver PAGA Members pursuant to the Second Amended Consolidated Complaint ("SACC").

Domino's operates as a leading pizza delivery company in the United States, with approximately 14,800 stores across 85 markets as of 2018, headquartered in Ann Arbor, Michigan. In addition to its retail operations, Domino's functions as a transportation services company, employing drivers to deliver products such as cheese, boxes, trays, meats, dough, and sauce from supply chain centers to its stores. Drivers also perform pre- and post-trip duties, conduct Department of Transportation ("DOT") safety inspections, and pick up empty trays. Domino's further employs non-exempt hourly workers, referred to as warehouse workers, to staff its distribution centers, where goods are inventoried, stored, and prepared for shipment.

The claims asserted in this action arise under the California Labor Code and include: (1) failure to pay all wages due for hours worked; (2) failure to pay overtime wages; (3) failure to implement a lawful alternative workweek schedule; (4) failure to provide meal and rest break premiums; (5) failure to reimburse employees for necessary work-related expenditures, including personal cell phones used for work; (6) failure to provide accurate itemized wage statements; (7) failure to maintain accurate payroll records; (8) failure to pay waiting time penalties for former employees; and (9) violations of the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 et seq.

The SACC alleges that Domino's pay structure for drivers, which relied on a piece-rate compensation system, resulted in unpaid wages for non-driving work, including but not limited to pre- and post-shift job duties, tray pick-ups, and time spent working while in the sleeper berth of delivery vehicles. The SACC further alleges that drivers were not reimbursed for the necessary use of their personal cell

phones for work-related purposes, such as coordinating deliveries or communicating with supervisors. Regarding hourly workers, the SACC asserts that Domino's required them to work an illegal alternative workweek schedule, which led to unpaid overtime wages. These workers also performed off-the-clock work before and after shifts and during meal and rest breaks, and were not provided compliant meal and rest breaks as required by law.

### B.    Factual Background and Procedural History

The procedural history of this case reflects its complexity, with significant appellate litigation, multiple amendments to pleadings, case consolidation, and extensive discovery efforts, all underscoring the contentious nature of the claims and defenses.

### 1.  *The Carmona Litigation*

On June 26, 2020, Plaintiffs Edmond Carmona, Abraham Mendoza, and Roger Nogueira filed a class action in Orange County Superior Court, alleging violations of California Labor Code § 2802 (unreimbursed expenses) and Business and Professions Code § 17200 *et seq.* (unfair competition). Domino's removed the case to this Court on October 1, 2020. Domino's then moved to compel arbitration, which the Court denied on December 2, 2020, holding Plaintiffs exempt from the FAA as transportation workers in interstate commerce. *See Carmona v. Domino's Pizza, LLC*, No. 8:20-cv-01905-JVS-JDE, 2020 U.S. Dist. LEXIS 227159 (C.D. Cal. Dec. 2, 2020). Domino's appealed to the Ninth Circuit on January 4, 2021, and obtained a stay on January 25, 2021. The Ninth Circuit affirmed on December 23, 2021, confirming Domino's drivers as exempt under the FAA. *See Carmona v. Domino's Pizza, LLC*, 21 F.4th 627 (9th Cir. 2021). Domino's petitioned the Supreme Court for certiorari, granted on November 7, 2022. The Court vacated and remanded for review under *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022). *See Domino's Pizza, LLC v. Carmona*, No. 21-1572, 143 S. Ct. 361 (2022). After supplemental

briefing, the Ninth Circuit reaffirmed its ruling on July 21, 2023, finding *Saxon* consistent with *Rittman v. Amazon.com, Inc*., 971 F.3d 904 (9th Cir. 2020). *See Carmona v. Domino's Pizza, LLC*, 73 F.4th 1135 (9th Cir. 2023). Domino's second cert petition, filed in October 2023, was denied on April 15, 2024, remanding the case for merits adjudication.

### 2. *The Arriola Litigation*

To preserve the timeliness of drivers' claims amidst the prolonged *Carmona* appeals, Plaintiff Arriola filed a class action complaint in this Court on July 28, 2023, asserting claims for unpaid wages, wage statement violations, waiting time penalties, and violations of the Unfair Competition Law. *See Arriola et al. v. Domino's Pizza, LLC*, Case No. 8:23-cv-01358-JVS-JDE. On August 28, 2023, Plaintiffs filed a First Amended Complaint, adding Burnett Brulee, Gyorgy Diaz, Daniel Etchepare, and Raul Quiroz as named plaintiffs (Dkt. 14). In November 2023, Plaintiffs filed a Second Amended Complaint to assert claims under PAGA for civil penalties based on the underlying Labor Code violations. The *Arriola* case was stayed pending resolution of the *Carmona* appeals to avoid duplicative litigation.

### 3. *The Consolidated Complaint*

Following the resolution of the appellate proceedings in April 2024, the parties filed a Joint Notice of Related Cases on June 7, 2024, identifying the overlap between *Carmona* and *Arriola* (Dkt. 32). On June 17, 2024, the Court deemed the cases related and transferred *Arriola* to this Court for coordinated proceedings (Dkt. 35). Recognizing the commonality of issues and the need for efficient litigation, the parties stipulated to file a Consolidated Complaint combining the parties, claims, and allegations from both cases. The Court granted the stipulation in August 2024, allowing the filing of the Consolidated Complaint (Dkt. 35). On April 15, 2025, Plaintiffs filed an Amended Consolidated Complaint, which added claims that drivers

were not paid for time spent working while in the sleeper berth of their delivery
vehicles (Dkt. 50).

### 4. Significant Discovery Efforts

The appellate litigation in this case was exceptionally time and labor-intensive,
requiring multiple rounds of briefing at the Ninth Circuit and Supreme Court levels.
Once litigation resumed in this Court in April 2024, the parties engaged in robust
discovery pursuant to the Court's Scheduling Order (Dkt. Nos. 44-45). Discovery
included the propounding and responding to special interrogatories, requests for
production of documents, requests for admissions, and initial disclosures. Plaintiffs
also noticed depositions of key Domino's personnel to explore the factual basis of
their claims.

To facilitate class certification efforts, Plaintiffs sought contact information for
putative class members and worked cooperatively with Domino's to prepare and
disseminate a *Belaire-West* notice, which allowed potential class members to opt out
of sharing their contact information (Dkt. 56). *See Belaire-West Landscape, Inc. v.
Superior Court*, 149 Cal. App. 4th 554 (2007). Domino's produced 15,488 pages of
discovery, including payroll records, timekeeping data, company policies, job
descriptions, training materials, performance evaluations, and personnel files for the
Named Plaintiffs. Plaintiffs' counsel meticulously analyzed and organized this
voluminous production to assess the strength of the claims and prepare for class
certification.

Similarly, Plaintiffs provided detailed discovery responses, including damage
estimates for the eight initial Named Plaintiffs,[1] and produced several hundred pages
of documents, such as time records, cell phone bills, emails, text messages, and other
relevant materials. This process was resource-intensive, requiring significant
attorney time and effort to compile and review.

---

[1] Plaintiffs Carmona, Mendoza, Nogueira, Arriola, Brulee, Diaz, Etchepare, and
Quiroz.

As the parties were preparing for class certification briefing, Plaintiffs sought to amend the complaint to add named plaintiffs to represent non-driver hourly workers employed in Domino's distribution centers and warehouses. These workers had potential claims for unpaid overtime, meal and rest break violations, and unpaid wages stemming from off-the-clock work and illegal alternative workweek schedules. Recognizing the extensive litigation history and the potential for additional years of costly proceedings, including a likely trial and further appeals, the parties agreed to pursue mediation to explore a global resolution of all claims (Dkt. Nos. 59-60).

### 5. *Mediation and Settlement Terms*

On September 25, 2025, the parties participated in an all-day, in-person mediation session facilitated by Joel Grossman, a highly regarded professional mediator with extensive expertise in wage-and-hour class actions (Desai Decl. ¶¶ 8, 31, 56). With Mr. Grossman's guidance, the parties engaged in rigorous, arm's-length negotiations and reached an agreement by the end of the day. Specifically, Domino's will pay a non-reversionary Total Settlement Amount of $2,300,000 to cover:

• Payments to Participating Class Members for their claims;

• A PAGA payment of $20,000, with 75% allocated to the California Labor and Workforce Development Agency ("LWDA") and 25% to PAGA Members;

• Court-approved attorneys' fees of up to one-third of the Total Settlement Amount, or $766,666;

• Litigation costs, estimated at $23,192;

• Service awards of $15,000 each to the ten Named Plaintiffs, totaling $150,000;

• Settlement administration costs of $11,000; and

• The employer's portion of payroll taxes, including FICA, FUTA, and other applicable state and federal taxes.

The remaining amount, referred to as the Net Settlement Proceeds (approximately $1,242,447 after deductions), will be distributed to Participating Class Members and PAGA Members according to a Court-approved plan of allocation based on their respective workweeks during the relevant class or PAGA periods.

## III.  THE PROPOSED SETTLEMENT

The complete terms of the Settlement are set forth in the Settlement Agreement, attached as **Exh. A** to the Declaration of Aashish Y. Desai. The following comprehensive summary highlights the key provisions to demonstrate the Settlement's fairness, reasonableness, and adequacy, and to support the Court's preliminary approval.

### A.  Settlement Eligibility and Defined Groups

The Settlement is structured to provide relief to all affected employees by defining specific groups that correspond to the claims asserted in the SACC. The eligible groups are:

• **Class A Driver Reimbursement Class**: All current and former California drivers who performed work for Domino's under its reimbursement policies from June 26, 2016, through the date the Court grants preliminary approval of the Settlement. This class addresses claims for unreimbursed business expenses, such as personal cell phone use.

• **Class A Driver Piece-Rate Class**: All current and former California drivers who performed work for Domino's under its piece-rate compensation plan from July 18, 2019, through the date of preliminary approval. This class focuses on unpaid wages for non-driving work, including sleeper berth time and related penalties.

• **Non-Driver Class**: All current and former hourly-paid, non-exempt California employees (excluding members of the Class A Driver Classes) who performed work for Domino's from August 27, 2020, through the date of preliminary approval. This

class covers claims for unpaid wages, overtime, meal and rest break, alternative workweek violations, and related penalties.

•  **Class A Driver PAGA Members**: All current and former California drivers who performed work for Domino's under its piece-rate compensation plan from July 14, 2022, through the date of preliminary approval. This group seeks PAGA penalties for Labor Code violations affecting drivers.

•  **Non-Driver PAGA Members**: All current and former hourly-paid, non-exempt California employees (excluding the Class A Driver Classes) who performed work for Domino's from November 8, 2023, through the date of preliminary approval. This group seeks PAGA penalties for violations affecting non-driver workers.

### B.    Settlement Amount and Allocation Formula

The Total Settlement Amount of $2,300,000 is non-reversionary, meaning all funds will be distributed to the Classes, PAGA Members, or used for Court-approved purposes, ensuring no funds revert to Domino's. The Settlement Amount covers the following components:

1. **Payments to Participating Class Members**: The primary portion of the Net Settlement Proceeds will be distributed to Participating Class Members based on their proportionate share of workweeks during the relevant class periods.

2. **PAGA Payment**: $20,000, with 75% ($15,000) allocated to the LWDA and 25% ($5,000) to PAGA Members, distributed pro rata based on workweeks during the respective PAGA Periods.

3. **Attorneys' Fees**: Up to one-third of the Total Settlement Amount, or $766,666, subject to Court approval.

4. **Litigation Costs**: Estimated at $23,192, covering reasonable expenses incurred by Class Counsel, such as filing fees, mediation costs, and travel expenses.

5. **Service Awards**: $15,000 for each of the ten Named Plaintiffs, totaling $150,000, to compensate for their time, effort, and risks in pursuing this litigation.

6. **Settlement Administration Costs**: $11,000 to cover the estimated costs of administering the Settlement, including data processing, notice dissemination, tax reporting, and distribution of payments.

7. **Employer Payroll Taxes**: The employer's portion of FICA, FUTA, and other applicable state and federal payroll taxes on the wage-based portions of the Settlement.

After deducting these amounts, the Net Settlement Proceeds (approximately $1,242,447) will be distributed to Participating Class Members and PAGA Members according to the following formulas, which ensure equitable allocation based on the duration of employment during the relevant periods:

• **Class A Driver Reimbursement Class Members**: A total of $75,000 from the Net Settlement Proceeds will be distributed to Participating Class A Driver Reimbursement Class Members on a pro rata basis. The allocation is calculated by dividing each member's "Individual Reimbursement Weeks Worked" (the total number of weeks worked by the individual during the Reimbursement Class Period, June 26, 2016, to preliminary approval, per Domino's records) by the "Total Reimbursement Weeks Worked" (the aggregate weeks worked by all members during the period). This ratio is multiplied by $75,000. Payments under this allocation are not subject to tax withholdings, as they compensate for unreimbursed expenses.

• **Non-Driver Class Members**: Fifty percent (50%) of the Net Settlement Proceeds, after subtracting the Reimbursement Class allocation, will be distributed to Participating Non-Driver Class Members on a pro rata basis. The allocation is calculated by dividing each member's "Individual Non-Driver Weeks Worked" (weeks worked from August 27, 2020, to preliminary approval) by the "Total Non-Driver Weeks Worked" (aggregate weeks for all members). This ratio is multiplied

by 50% of the remaining Net Proceeds. These payments are subject to tax withholdings, as they compensate for wage-based claims.

• **Class A Driver Piece-Rate Class Members**: The other fifty percent (50%) of the Net Settlement Proceeds, after the Reimbursement allocation, will be distributed to Participating Class A Driver Piece-Rate Class Members on a pro rata basis. The allocation is calculated by dividing each member's "Individual Class A Driver Piece-Rate Weeks Worked" (weeks worked from July 18, 2019, to preliminary approval) by the "Total Class A Driver Piece-Rate Weeks Worked" (aggregate weeks for all members). This ratio is multiplied by 50% of the remaining Net Proceeds. These payments are subject to tax withholdings.

• **PAGA Members**: Twenty-five percent (25%) of the $20,000 PAGA payment ($5,000) will be distributed to PAGA Members (both Class A Driver PAGA Members and Non-Driver PAGA Members) on a pro rata basis. The allocation is calculated by dividing each member's "Individual PAGA Pay Periods" (pay periods worked during the respective PAGA Periods: July 14, 2022, to preliminary approval for drivers; November 8, 2023, to preliminary approval for non-drivers) by the "Total PAGA Pay Periods" for the respective group. This ratio is multiplied by $5,000. These payments are not subject to tax withholdings, as they represent civil penalties.

Payments will be issued within 35 calendar days after the Court grants final approval of the Settlement. Participating Class Members and PAGA Members will have 120 days to cash their Settlement Checks. Any uncashed funds will be handled pursuant to the Settlement Agreement to California's unclaimed property fund.

The estimated average recoveries, based on Domino's payroll data and Plaintiffs' calculations, are as follows:

| Settlement Member | Estimated Average Recovery | Estimated Amount per Work Week |
|---|---|---|
| Class A Driver Reimbursement Class Member | **$301** | $75,000/249 |

| Class A Driver Piece-Rate Class Member | $2,304 (573,723/249) | $19 |
| Non-Driver Class Member | $1,255 (573,723/457) | $19 |

These estimates reflect a meaningful recovery for low-wage workers, particularly considering the litigation risks discussed below.

## C.    Release of Claims

The releases in the Settlement are carefully tailored to the claims asserted in the SACC, ensuring fairness and compliance with legal standards. Participating Class Members will release Domino's and its affiliates from all wage-and-hour claims arising out of the allegations in the SACC during the respective Class Periods.[2] These claims include, but are not limited to, unpaid wages, overtime, meal and rest break violations, reimbursement claims, wage statement violations, and waiting time penalties. The Released Class Claims expressly exclude any claims for civil penalties under PAGA, preserving those rights for PAGA Members.

All PAGA Members, including those who opt out of the Class Claims, will release and discharge Domino's from all claims for civil penalties under PAGA arising out of the allegations in the SACC and/or Plaintiffs' PAGA notices to the LWDA during the respective PAGA Periods.[3] The Released PAGA Claims are limited to the specific periods defined (July 14, 2022, to preliminary approval for drivers; November 8, 2023, to preliminary approval for non-drivers) and do not extend to unrelated claims or periods outside the PAGA Periods. This ensures that the releases are narrowly tailored and do not overreach.

## D.    Appointment of Class Representatives and Class Counsel

Plaintiffs move to certify three classes for settlement purposes only:

---

[2] The "Released Class Claims."
[3] The "Released PAGA Claims."

11

- **Class A Driver Reimbursement Class**: All current and former California drivers who performed work for Domino's under its reimbursement policies from June 26, 2016, through the date of preliminary approval.

- **Class A Driver Piece-Rate Class**: All current and former California drivers who performed work for Domino's under its piece-rate compensation plan from July 18, 2019, through the date of preliminary approval.

- **Non-Driver Class**: All current and former hourly-paid, non-exempt California employees (excluding the Class A Driver Classes) who performed work for Domino's from August 27, 2020, through the date of preliminary approval.

Plaintiffs propose the following appointments as class representatives: Edmond Carmona, Abraham Mendoza, and Roger Nogueira for the **Class A Driver Reimbursement Class**; Thomas Arriola, Burnett Brulee, Gyorgy Diaz, Daniel Etchepare, and Raul Quiroz for the **Class A Driver Piece-Rate Class**; and Santos Fonseca Romero and Marc Moran for the **Non-Driver Class**. These individuals have actively participated in the litigation, provided discovery, and assumed risks on behalf of the Classes.

Plaintiffs further propose that Aashish Y. Desai and Adrianne De Castro of Desai Law Firm, P.C., be appointed as Class Counsel. Counsel has extensive experience in complex wage-and-hour class actions, as demonstrated by their successful prosecution of this case through appellate litigation, discovery, and mediation. (Desai Decl. ¶¶ 13-19, 56; De Castro Decl. ¶¶ 3-5).

**E.     Notice Procedure**

The proposed notice procedure provides the "best notice practicable" under Federal Rule of Civil Procedure 23(c)(2)(B). Within 20 days of preliminary approval, Domino's will provide the Settlement Administrator with a Class List including names, last-known addresses, emails (if available), SSNs (for taxes), and workweek data. The Administrator will promptly send Notices by first-class mail and email

(where available). Class Members have 45 days from mailing to object or opt out. Those who do not timely opt out are bound by the Settlement, including claim releases. Undeliverable Notices will be skip-traced and re-sent. This ensures adequate notice and opportunities to participate, object, or exclude, consistent with due process.

### F.    Settlement Administration

The parties have selected ILYM Group, Inc. as the Settlement Administrator after soliciting bids from three reputable firms with significant experience in administering complex class action settlements. The Administrator's responsibilities include processing the Class List, disseminating Notices, handling opt-out and objection requests, calculating individual payments, issuing checks, managing tax reporting, and addressing any disputes during the distribution process. The estimated administration costs are $11,000, representing approximately (0.47%) of the Total Settlement Amount. This amount is reasonable given the complexity of the Settlement, which involves multiple classes, PAGA payments, and tax considerations, and is consistent with administration fees in comparable wage-and-hour class actions.

### G.    Class Representative Service Awards

Under the Settlement Agreement, the ten Named Plaintiffs will request service awards of $15,000 each, totaling $150,000, or approximately 6.5% of the Total Settlement Amount. Plaintiffs support this request in more detail in the concurrently filed Motion for Attorneys' Fees, Costs and Service Awards.

### H.    Attorneys' Fees

The Settlement Agreement provides that Plaintiffs' Counsel will request an award of attorneys' fees in the amount of one-third of the Total Settlement Amount, or $766,666, plus reimbursement of actual litigation costs, to be paid from the Settlement fund. Plaintiffs support this request, which is *less than* their lodestar of

$1,121,883, in more detail in the concurrently filed Motion for Attorney's Fees, Costs and Service Awards. At the preliminary approval stage, the Court need only determine that the proposed fees and costs are within the range of reasonableness.

## IV.    ARGUMENT

The approval of a class action settlement is a two-step process. First, the Court determines whether the proposed settlement deserves preliminary approval, warranting notice to the class. Second, after notice and an opportunity for objections, the Court considers final approval. *See Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Manual for Complex Litigation* §§ 21.632-634 (4th ed. 2004). For preliminary approval, the Court must assess: (1) whether the settlement classes meet the requirements for certification under Federal Rule of Civil Procedure 23(a) and (b) if not yet certified; and (2) whether the settlement is fair, reasonable, and adequate under Rule 23(e)(2). The Settlement here satisfies both requirements.

### A.    Certification of the Rule 23 Classes Is Proper

The parties agree to certify the three classes defined above for settlement purposes only. PAGA claims do not require class certification, as they are representative actions brought on behalf of the state. *See Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009). The validity of temporary settlement classes is well-established and rarely questioned. *See Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:22* (4th ed. 2002). The proposed classes are coextensive with those pled in the SACC and readily satisfy the requirements of Rule 23(a) and (b)(3).

#### 1. *Rule 23(a) Requirements Are Satisfied*

Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation. Each element is met here.

•    **Numerosity**: The proposed classes are sufficiently numerous to make joinder impracticable. The entire Class includes approximately 706 (249+457) members, the

14

Class A Driver Piece-Rate Class includes 249 members, and the Non-Driver Class includes 459 members (Desai Decl. ¶ 38-55). These numbers far exceed the threshold for numerosity. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (noting joinder is impracticable for classes of 40 or more).

• **Commonality**: Rule 23(a)(2) requires questions of law or fact common to the class, a requirement construed permissively in the Ninth Circuit. *Id.* Here, the claims stem from the same source: Domino's uniform policies and practices regarding piece-rate compensation, sleeper berth time, reimbursement for personal cell phone usage, alternative workweek schedules, overtime payments, and meal and rest break provisions. These policies give rise to common legal and factual questions, such as whether Domino's pay practices violated the Labor Code, whether its reimbursement policies were adequate, and whether its workweek schedules were lawful. These common issues drive the liability determination for the entire class, satisfying Rule 23(a)(2).

• **Typicality**: Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of those of the class. The Ninth Circuit applies a permissive standard, requiring only that the representatives' claims be "reasonably co-extensive" with those of absent class members, not substantially identical. *See Maloney v. Mullen Auto., Inc.*, No. 25 Civ. 1187, 2025 U.S. Dist. LEXIS 114767, at *8 (C.D. Cal. May 15, 2025). Here, the Named Plaintiffs worked as drivers or non-exempt hourly workers in California and were subject to the same pay policies, reimbursement practices, and work schedules as the Class Members. They allege the same wage-and-hour violations, including unpaid wages, overtime violations, and unreimbursed expenses, arising from the same set of facts and legal theories. Their claims are therefore typical of the Classes.

• **Adequacy**: Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class, and Rule 23(g) requires adequate

counsel. *See Hanlon*, 150 F.3d at 1020; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-27 (1997) (adequacy fails only with conflicting interests). The Named Plaintiffs have no interests antagonistic to the Classes, sharing the same goal of recovering unpaid wages and penalties. They have devoted substantial time to this litigation, including participating in pre-suit investigations, providing declarations, producing documents, responding to discovery, and attending mediation (Desai Decl. ¶¶ 57-59). Class Counsel, Aashish Desai and Adrianne De Castro of Desai Law Firm, P.C., have extensive experience in complex employment and class action litigation. They have successfully prosecuted this case through multiple appeals, extensive discovery, and mediation, demonstrating their ability to represent the Classes effectively (Desai Decl. ¶¶ 57-59; De Castro Decl. ¶¶ 3-7). This satisfies both Rule 23(a)(4) and Rule 23(g).

### 2. Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions and that a class action is superior to other methods for adjudicating the controversy. Both requirements are met here.

• **Predominance**: The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. *See Amchem*, 521 U.S. at 623. It does not require every element to be susceptible to class-wide proof, but rather that common issues are more prevalent or important than individual ones. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Here, the claims hinge on Domino's uniform policies regarding piece-rate compensation, sleeper berth time, cell phone reimbursements, alternative workweek schedules, overtime, and meal and rest breaks. These policies apply class-wide, and their legality is the central issue driving liability. While individual damages may vary, the common questions about

Domino's practices predominate, as they can be resolved through generalized proof, such as payroll records and company policies.

• **Superiority**: A class action is superior when it achieves economies of scale and conserves judicial resources compared to individual actions. *See* Fed. R. Civ. P. 23(b)(3). Here, individual Class Members are unlikely to pursue separate lawsuits due to the modest damages at issue, which would be cost-prohibitive to litigate individually. *See Cawthorne v. Rush Truck Ctrs. of Cal., Inc.*, No. 17 Civ. 1541, 2019 U.S. Dist. LEXIS 248125, at *10 (C.D. Cal. Mar. 18, 2019) (finding individual suits inefficient for over 4,000 plaintiffs with modest claims); *Martin v. Monsanto Co.*, No. 16 Civ. 2168, 2017 U.S. Dist. LEXIS 135351, at *27 (C.D. Cal. Mar. 24, 2017). A class action concentrates the litigation in one forum, avoids inconsistent rulings, and ensures equitable recovery for all affected employees.

### 3. Plaintiffs' Counsel Should Be Appointed as Class Counsel

The adequacy of Class Counsel is evaluated based on: (1) work performed on the matter; (2) experience in handling class actions; (3) knowledge of applicable law; and (4) resources committed to the representation. *See* Fed. R. Civ. P. 23(g)(1)(A). Desai Law Firm, P.C., through Aashish Desai and Adrianne De Castro, satisfies these criteria. Counsel have devoted significant time to this case, including pre-suit investigation, drafting complaints, opposing arbitration, litigating appeals, conducting discovery, and negotiating the Settlement (Desai Decl. ¶¶ 13-19). They have decades of experience in wage-and-hour class actions, successfully handling similar cases in federal and state courts, and possess deep knowledge of California labor law and class action procedure (*Id.*) As a contingency-based firm, they have committed substantial resources, advancing all litigation costs without guarantee of recovery, demonstrating their ability to represent the Classes effectively.

///

///

### B.    The Settlement Is Fair, Reasonable, and Adequate

Once the Court determines that class certification is proper, it must assess whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). At the preliminary approval stage, the Court looks for "obvious deficiencies" and determines whether the settlement is non-collusive and falls within the range of possible final approval. *See Walsh v. CorePower Yoga LLC*, No. 16 Civ. 5610, 2017 U.S. Dist. LEXIS 20974, at *19 (N.D. Cal. Feb. 14, 2017) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).[4] Courts consider several factors, including: (1) the strength of the plaintiffs' case, the risks, expense, complexity, and likely duration of further litigation, and the risk of maintaining class action status; (2) the amount offered in settlement; (3) the extent of discovery completed and the stage of proceedings; and (4) the experience and views of counsel. *Hanlon*, 150 F.3d at 1026. Each factor supports preliminary approval here.

#### 1. *The Settlement Was Reached After Contentious Litigation and Arm's-Length Negotiations*

The Settlement is the product of concerted adversarial litigation spanning nearly six years, including extensive appellate motion practice, amendments to pleadings, and significant discovery efforts. *See Johnson v. Moss Bros. Auto Grp., Inc.*, No. 19 Civ. 2456, 2022 U.S. Dist. LEXIS 112361, at *10 (C.D. Cal. June 24, 2022) (finding arm's-length negotiation where parties actively litigated with pending motions). The parties coordinated a *Belaire-West* notice, propounded and responded to discovery, and engaged in multiple rounds of appeals to the Ninth Circuit and Supreme Court. The Settlement was reached only after a full-day, in-person mediation session on September 25, 2025, facilitated by Joel Grossman, a mediator with specialized expertise in wage-and-hour class actions (Desai Decl. ¶¶ 31-37). The

---

[4] *See also* Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 13.15 (5th ed.).

mediation involved vigorous negotiations, culminating in a Memorandum of Understanding, followed by further negotiations to finalize the detailed Settlement Agreement. *See Criswell v. Boudreaux*, No. 20 Civ. 1048, 2021 U.S. Dist. LEXIS 187438, at *8 (E.D. Cal. Sept. 29, 2021) (finding fair negotiation with experienced mediator); *Hudson v. Libre Tech. Inc.*, No. 18 Civ. 1371, 2020 U.S. Dist. LEXIS 84576, at *16 (S.D. Cal. May 12, 2020) (noting mediator involvement and lengthy negotiations as indicia of fairness). The absence of collusion and the robust negotiation process strongly support preliminary approval.

### 2. *Plaintiffs Faced Significant Risks in Continuing Litigation*

Approval of a class settlement is appropriate when plaintiffs face significant barriers to recovery. *See Betancourt v. Advantage Human Resourcing, Inc.*, No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361, at *10-11 (N.D. Cal. Jan. 28, 2016). Here, Plaintiffs faced multiple substantial obstacles that could have resulted in little to no recovery:

• **Arbitration Agreements for Non-Drivers**: Many non-exempt hourly workers are subject to arbitration agreements that could preclude class action litigation altogether. If enforced, these agreements would require each worker to pursue individual arbitration, which is time-consuming and cost-prohibitive for modest claims. *See Arredondo v. Southwestern & Pac. Specialty Fin., Inc.*, No. 18 Civ. 1737, 2022 U.S. Dist. LEXIS 23758, at *31 (E.D. Cal. Feb. 9, 2022) (approving settlement where arbitration agreements posed barriers).

• **Risk of Certification Denial**: Domino's would likely argue that individual issues, such as the amount of off-the-clock work performed by drivers and non-drivers, predominate over common questions, jeopardizing class certification under Rule 23(b)(3). *See Bowerman v. Field Asset Servs.*, 60 F.4th 459, 460 (9th Cir. 2023) (denying certification where individual testimony was necessary).

- **Legal Uncertainty on "Estimates"**: The drivers' claims rely on the theory that Domino's use of predetermined "estimates" for non-driving work violates California law when exact time tracking is practicable. However, the California Supreme Court is currently reviewing *Camp v. Home Depot U.S.A., Inc.*, 84 Cal.App.5th 638 (2022), which held such estimates unlawful (review granted Feb. 1, 2023, Case No. S277518; briefing completed). A ruling overturning *Camp* could undermine Plaintiffs' legal theory, significantly weakening their case.

- **Adverse Precedent in *Silva***: In a related case, *Silva v. Domino's Pizza, LLC*, No. SACV 18-2145 JVS (JDEx) (C.D. Cal. 2019), this Court granted summary judgment in favor of Domino's on their unpaid wage claim under Labor Code § 226.2(a)(1). The Court held that there is a presumption under California law that employees are not working when clocked out, and the plaintiff failed to produce evidence that Domino's knew or should have known of off-the-clock work. *See Eddie Silva v. Domino's Pizza, LLC*, No. 21-55093, 2022 U.S. App. LEXIS 3228 (9th Cir. Feb. 8, 2022) (affirming). This ruling poses a significant risk to Plaintiffs' unpaid wage claims, as this Court could reach a similar conclusion here, despite Plaintiffs' efforts to marshal evidence of Domino's knowledge.

- **Trial Risks on Liability and Damages**: Proving liability and damages at trial would be challenging. Domino's would dispute knowledge of off-the-clock work by drivers (e.g., pre/post-shift duties, sleeper berth time) and non-drivers (e.g., overtime, breaks). It would also contest the necessity of cell phone use for work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (requiring evidence of employer knowledge for off-the-clock claims). Establishing class-wide damages would require extensive individual testimony, risking decertification or reduced recovery. *See Bowerman*, 60 F.4th at 460.

Continuing litigation through trial and inevitable appeals would be lengthy, costly, and uncertain, with the potential for no recovery. The Settlement provides immediate, substantial relief, bypassing these risks.

### 3. The Settlement Amount Is Appropriate

The Settlement Amount of $2,300,000 must fall within the range of reasonableness, balancing the plaintiffs' expected recovery against the proposed offer. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079; *Vasquez v. Coast Valley Roofing*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009). The $2.3 million represents approximately 16-18% of the total potential damages and penalties, a strong recovery given the risks outlined above. Plaintiffs' Counsel calculated the maximum exposure using Domino's payroll and employment records, ensuring a data-driven analysis.

### a. Recovery for Class A Drivers' Claims

Plaintiffs estimate the following potential damages for the Class A Driver Reimbursement and Piece-Rate Classes, based on Domino's data:

• **Unpaid Wages**: Drivers worked approximately 2 unpaid hours per week for non-driving tasks (e.g., pre/post-shift duties, tray pick-ups) and 2 hours per week in the sleeper berth. With 249 class members, 29,783 total workweeks, and an average hourly rate of $44, the unpaid wage exposure is approximately $5,241,808 (29,783 weeks × 4 hours × $44). Liquidated damages under Labor Code § 1194.2 double this to $10,483,616.

• **Waiting Time Penalties**: Under Labor Code § 203, employers who willfully fail to pay wages at separation owe up to 30 days' pay. Assuming one-third of the class (89 members) are former employees, with an 8-hour day at $44/hour, the penalty is $352/day × 30 days × 89 = $937,170.

• **Reimbursement Claims**: Labor Code § 2802 requires reimbursement for necessary expenses, such as cell phone use. Assuming $100/month per driver, 10%

work-related use, and 39 months in the class period, the exposure is $10/month × 39 months × 249 members = $97,110.

• **Inaccurate Wage Statements**: Labor Code § 226 imposes a maximum penalty of $4,000 per employee for wage statement violations. For 249 members, this is $996,000.

The total maximum exposure for non-PAGA drivers' claims is approximately $12,513,896. The $2.3 million Settlement represents 18% of this amount, a robust recovery given the risks of proving liability and damages. Courts have approved similar percentages in wage-and-hour cases. *See Singh v. Roadrunner Intermodal Servs., LLC*, No. 15 Civ. 01497, 2018 WL 2412325, at *7 (E.D. Cal. May 29, 2018) (approving settlement at 12% of estimated damages). The Settlement reflects a reasonable compromise, as "the very essence of a settlement is compromise, 'a yielding of absolutes and abandoning of highest hopes.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

### b. Recovery for Non-Driver Labor Code Claims

For the Non-Driver Class, Plaintiffs estimate the following based on Domino's data:

• **Unpaid Wages**: Non-drivers worked approximately 7.5 unpaid hours per week, at an average hourly rate of $24, across 30,065 workweeks for 457 members. This yields $5,411,700 (30,065 × 7.5 × $24), plus $5,411,700 in liquidated damages, totaling $10,823,400.

• **Overtime/Alternative Workweek Claims**: Assuming 0.5 overtime hour per shift at half of 64,183 shifts, with an overtime rate of $36 ($24 × 1.5), the exposure is 16,045 hours × $36 = $577,620.

• **Meal and Rest Break Penalties**: Under Labor Code §§ 226.7 and 512, employers must provide meal and rest breaks, with premiums for violations.

Assuming a 5% violation rate for 64,183 shifts at $24/hour, the exposure is 3,209 shifts × $24 = $77,016.

- **Waiting Time Penalties**: For 152 former employees (one-third of 457), at $192/day (8 hours × $24), the penalty is $192 × 30 days × 152 = $875,520.

- **Inaccurate Wage Statements**: For 457 members at $4,000 each, the exposure is $1,828,000.

The total maximum exposure for non-driver claims is approximately $14,181,556. The $2.3 million Settlement represents 16% of this amount, a strong recovery given the risks, particularly the arbitration agreements that could preclude litigation entirely. *See Johnson v. Moss Bros. Auto Grp., Inc.*, No. 19 Civ. 2456, 2022 U.S. Dist. LEXIS 112361, at *10 (C.D. Cal. June 24, 2022) (approving 16.67% recovery); *Arredondo*, 2022 U.S. Dist. LEXIS 23758, at *31.

### c. The PAGA Settlement Amount Is Reasonable

The PAGA allocation of $20,000 (0.33% of estimated PAGA exposure and 0.86% of the Total Settlement Amount) is reasonable and appropriate for approval. Courts have broad discretion to reduce PAGA penalties if they are "unjust, arbitrary, oppressive, or confiscatory." *See* Cal. Lab. Code § 2699(e)(2); *Fleming v. Covidien Inc.*, No. 10 Civ. 1487, 2011 U.S. Dist. LEXIS 154590, at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalty by over 80%). The $20,000 allocation avoids excessive penalties while serving PAGA's purpose of deterring violations and vindicating employee rights. Courts routinely approve similar proportionate recoveries.[5] In cases with large settlements, compromising PAGA penalties maximizes wage recovery for class members, aligning with PAGA's goals. *See*

---

[5] *See Billups-Larkin v. Aramark Servs., Inc.*, No. 21 Civ. 6852, 2023 U.S. Dist. LEXIS 122756, at *9 (N.D. Cal. July 17, 2023) (approving 1.9% of PAGA exposure); *McLeod v. Bank of Am., N.A.*, No. 16 Civ. 3294, 2018 U.S. Dist. LEXIS 195314, at *4 (N.D. Cal. Nov. 14, 2018) (approving 1.1%); *Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15 Civ. 660, 2017 U.S. Dist. LEXIS 137182, at *6, *29-30 (N.D. Cal. Aug. 25, 2017) (approving 1.4%).

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016) (noting settlements providing fair compensation deter violations).

### 4. The Parties Engaged in Sufficient Discovery to Make an Informed Decision About Settlement

A settlement requires sufficient discovery to ensure the parties have adequate information to assess the case. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000). Here, the parties conducted both formal and informal discovery before entering settlement discussions. Formal discovery included special interrogatories, requests for production, requests for admissions, and initial disclosures. Domino's produced 15,488 pages of documents, including relevant company policies, time records for all Named Plaintiffs, job descriptions, training materials, performance evaluations, payroll data, and personnel files. Plaintiffs produced several hundred pages of documents, including their own time records, cell phone bills, emails, text messages, and other relevant materials (Desai Decl. ¶¶ 8, 27-33, 57 -59). This extensive discovery allowed Plaintiffs' Counsel to conduct a thorough analysis of the strengths and weaknesses of the claims, including liability, damages, and certification risks. The parties' informed decision to settle was based on a comprehensive understanding of the case, supporting preliminary approval.

### 5. Counsel's Experience and Views Support Approval

Courts accord significant weight to the recommendations of experienced counsel, who are best positioned to evaluate the case's merits and risks. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Plaintiffs' Counsel, have decades of experience prosecuting complex employment and class action litigation, and believe the Settlement is fair, reasonable, and adequate, particularly in light of the significant risks of continued litigation and the robust recovery achieved including wage-and-hour cases similar to this one. (Desai Decl. ¶¶ 38-55, 63-64).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this unopposed motion for preliminary approval of the proposed Class Action and PAGA Settlement. The Settlement is fair, reasonable, and adequate, providing substantial relief to the Classes while avoiding the significant risks and delays of continued litigation. The proposed classes satisfy the requirements of Rule 23(a) and (b)(3), and the notice and administration plans comply with due process. Plaintiffs further request that the Court certify the three settlement classes for settlement purposes only, appoint the Named Plaintiffs as class representatives and Desai Law Firm, P.C., as Class Counsel, approve the proposed Notices and Settlement Administrator, and schedule a final approval hearing in accordance with the timeline set forth in the Proposed Order filed concurrently herewith.

Respectfully submitted,

Dated:  November 24, 2025             DESAI LAW FIRM, P.C.

By:  */s/ Aashish Y. Desai*
_____
Aashish Y. Desai
Adrianne DeCastro
Attorneys for Plaintiffs

## CERTIFICATION

The undersigned, counsel of record for Plaintiffs, hereby certifies that this brief contains 6,891 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Aashish Y. Desai*
_____
Aashish Y. Desai